## *In re* JAMES.

*(Circuit Court, W. D. Missouri.* 1884.)

1. REMOVAL OF A PRISONER FROM STATE TO UNITED STATES COURT—JURISDICTION—WRIT OF HABEAS CORPUS NOT NECESSARY ON APPLICATION FOR ORDER OF TRANSFER.

Section 1014, Rev. St. 1878, among other things provides that "when any offender or witness is committed in any district other than that where the offence is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and the marshal to execute, a warrant for his removal to the district where the trial is to be had." Under this statute the practice of hearing an application for removal without invoking the writ of *habeas corpus* is admissible and proper.

2. SAME.

When a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases.

3. SAME—EFFECT OF REMOVAL UPON LIABILITY OF BONDSMEN.

The removal of a prisoner by a court of competent jurisdiction beyond the control of his bondsmen, thus rendering them unable to produce the prisoner at the time and place set for trial, as undertaken by the conditions of the bond, is, in the language of the authorities, "an act of the law," and can be set up in defense to a suit on the bond.

4. SAME—FAILURE OF STATE TO APPEAR IN PROCEEDINGS TO TRANSFER.

The failure of the state to appear by its judicial officers to object to proceeding to remove a prisoner from the jurisdiction of its courts can make no difference where the right of the state fully appears and has been made known to the court.

*Comingo, Slover & Philips,* for petitioner.

*Mr. Warner,* Dist. Atty., for United States.

KREKEL, J. It appears that on the fourth day of December, 1883, Joseph H. McGee, the United States marshal of the Western district of Missouri, filed his affidavit before Fred. W. Perkins, one of the United States commissioners for this district, charging the defendant, Frank James, with conspiring to rob and with robbing one Alexander S. Smith, a paymaster of the United States, of $5,000, money belonging to the United States, alleging that said robbery took place on the eleventh day of March, 1881, in the Northern district of Alabama, and in support of his affidavit produced an indictment found by a United States grand jury of said district, charging said James and others with conspiracy to rob and with robbing said paymaster of $5,000 belonging to the government. A warrant was thereupon issued by the commissioner and placed in the hands of the United States marshal of this district for execution. On the twenty-first day of December, 1883, the marshal, under said warrant, arrested the defendant, James, and brought him before the commissioner. The defendant waived examination, whereupon the commissioner committed him to the custody of the marshal, who applies for an order to transfer the prisoner to the Northern district of Alabama, to answer the indictment for robbery there pending against him. It is

in proof that at the time of the arrest by the marshal, the defendant, James, was in custody of Robert N. Hudspeth and others, claiming that they had him in keeping as his bondsmen, and protesting against the defendant's arrest, which protest the marshal ignored.    They now appear and file their petition, praying that the prisoner may be returned into their custody so as to enable them to have his person before the criminal court of Jackson county, Missouri, on the fourteenth day of January, 1884, to answer an indictment pending in that court against him for robbery in the first degree.    In support of their petition they present a transcript from the criminal court of Jackson county, showing the finding of the indictment spoken of, defendant's arrest and incarceration in the county jail of Jackson county, his arraignment and plea of not guilty, the order allowing bail to be given, and petitioners becoming his bondsmen.    The question is, who shall have possession of the prisoner, the United States, that it may proceed against him under the indictment for robbery charged to have been committed on the eleventh day of March, 1881, in Alabama, or the bondsmen, that they may produce him in person before the criminal court of Jackson county to answer the indictment for robbery charged to have been committed in Jackson county, Missouri, on the seventh day of September, 1881.

A preliminary question as to the practice of making orders of transfer, such as now applied for, can be disposed of in a few words.    Section 1014, Rev. St. 1878, among other things, provides that "when any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and the marshal to execute, a warrant for his removal to the district where the trial is to be had."  Under this statute it was held by Judge HAMMOND, of the Western district of Tennessee, in the *Brawner Case,* 7 FED. REP. 86, that the practice of hearing an application for removal without invoking the writ of *habeas corpus* is admissible and proper.    In the case cited, as well as the *Buell Case,* decided by Judges DILLON and TREAT, (3 Dill. 116,) it was held that in acting on such motions the judge is not necessarily performing a ministerial duty, but that he may look into the proceedings before the commissioner, or the court in which the indictment was found, for the purpose of enabling him to properly determine questions pertaining to the removal, and grant or refuse the order accordingly.    There can be but little, if any, doubt that the question as to who is legally entitled to the prisoner can properly be passed on in the proceedings before me.

The question of importance which the case presents grows out of the dual form of government under which we live.    The federal, as well as the state governments, have their own criminal code, and appropriate machinery for their enforcement.    A long line of decisions in civil cases have quite well settled the law that whatever tribunal

first obtains jurisdiction of the subject-matter in controversy shall maintain it. The rules laid down in civil cases have been followed and applied in criminal causes wherever they could properly be made applicable.

It has been argued that no conflict between the federal and state governments arises in this case, because the controversy is between the federal authorities and the sureties on James' bond. While this would seem so at first glance, a nearer view discloses that its correctness depends on the relations securities in a bail bond sustain to the state and the prisoner. By taking bail, the state parts with the exclusive control of the prisoner, and consents that the bondsmen may exercise direct control over him, but for the purpose only to enable them to produce him in court in conformity to their undertaking. The state retains the right in certain contingencies to resume the custody of the offender. If, for instance, he were to threaten or commit a new violation of law, it could not be claimed that the delinquent was free from arrest for the new offense because he was on bail. Bail bonds should be so drawn, and recognitions so taken, as to bind the delinquent to good behavior while out on bail, and the liability of the bondsmen should extend to such a provision as well as producing the defendant in court. To this security, at least, it would seem society is entitled as against one who has been indicted. Without such security, accused may be turned loose to further prey upon the community. The laws of Missouri allow bonds and recognitions to be taken as suggested, and it ought to be in all cases. The state, by allowing bail to be taken, does not relinquish its rights over the prisoner to the extent of disabling it from arresting him, if he were about to pass beyond its jurisdiction. The leading purpose on the part of the state in taking bail is to secure the offender's appearance for trial, while at the same time allowing him all personal freedom not inconsistent with this object. In this the state and sureties have a common and joint interest, and each has the right at any time to interfere when the accused threatens or is about to defeat the purposes of the bail bond.

The principles of the law stated are continually acted on in practice. When a bail bond or recognizance is foreforfeited by the sureties failing to produce their principal, the court, at the time it declares the forfeiture, issues its warrant for the arrest of the offender, thus asserting its suspended rights to have the custody of the prisoner. Under the views expressed, the state of Missouri, by its judicial officers, might well have appeared in these proceedings, and alone or jointly with the bondsmen of James objected to his transfer beyond the jurisdiction of the state. Their failing to do so can make no difference, as the right of the state fully appears and was made known to the court as hereinafter shown. To indicate the spirit animating the federal authorities in this district, it may be stated that Clarence Hite, one of the confederates in the alleged robberies, was indicted in this court

for the offense of delaying the United States mails while the robberies were being perpetrated, was arrested in the state of Kentucky on a warrant issued from this court. When brought here, the court's attention was called to the fact that the prisoner stood indicted in a state court of Missouri for a high crime. Jurisdiction was at once relinquished and the accused turned over to the state court, was tried, convicted, and sentenced. The people, in their character as citizens of the United States and of the state, are alike interested in the enforcement of the laws, be they state or national. Those intrusted with their execution should do so in that spirit of comity which alone can secure to us the full benefit of the institutions under which we live.

Having briefly alluded to the rights which the state of Missouri has in these proceedings, we pass to the consideration of those of the bondsmen. It has been stated that the state of Missouri, through its judicial officers, and in conformity to law, released James from custody, and delivered him into the keeping of his bondsmen. They bound themselves to produce him before the criminal court of Jackson county, in this state, on the fourteenth day of January next, to answer an indictment for robbery. If the defendant is removed to Alabama the bondsmen say they will not be able to produce him as they have bound themselves to do, and that their recognizance will be forfeited. The question thereupon arises, can these bondsmen successfully defend themselves in a suit on their bond, by showing that their principal was wrested from them by federal authority? No adjudged case deciding the exact point has been found. It has been decided, both in federal and state courts, that when the bondsmen permit the accused to go at large, and he passes beyond the jurisdiction of the state and commits an offense for which he is arrested and detained, this does not constitute a defense to a suit on a bail bond. It has also been decided that if the prisoner goes beyond the jurisdiction of the state, and, while in another state, he is arrested upon the requisition of the governor of still another state, delivered up, and held under arrest, this constitutes no defense. The disallowing of such defenses proceed upon the ground that the bondsmen have the right, and it is their duty, to restrain the accused from passing out of the jurisdiction of the court; and their failing to do so cannot be set up by them in defense, otherwise they would be allowed to avail themselves of their own neglect. It is conceded by the authorities that the bondsmen have the right to hold the accused in actual custody, if necessary, or do anything else regarding him which will secure them the possession of his person, so that they may be enabled to comply with their contract to produce him in court. The rights of the bondsmen over the prisoner have been variously described. Commencing with Bacon's Abridgement, it is said that his bondsmen "are his gaolers of his own choosing." Blackstone has it that the bondsmen hold their principal in "friendly custody." Other authorities compare the bailing to an extension of the prison bounds,—all agreeing that the

bondsmen have complete control over the accused, can keep him in actual custody, and arrest him without a warrant. 1 Bac. Abr. 497; *U. S.* v. *Van Fossen,* 1 Dill. C. C. 406; 5 Ind. 623; *Taintor* v. *Taylor,* 36 Conn. 242; *Taylor* v. *Taintor,* 16 Wall. 367; *State* v. *Horn,* 70 Mo. 466.

In the case of *Taylor* v. *Taintor, supra,* the supreme court of the United States says:

"When bail is given the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent; they may pursue him into another state; they may arrest him on the Sabbath, and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of a new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner. The rights of the bail in civil and criminal cases are alike. The securities have the control of his person; they are warned at their peril to keep him within their jurisdiction, and to have his person ready to surrender when demanded."

In this same case, (*Taylor* v. *Taintor,*) the supreme court of the United States, on the question as to the authority first seizing to hold the accused, says:

"When a state court and a court of the United States may each take jurisdiction, (as in this case,) the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases. It is indeed a principle of universal jurisprudence that, when jurisdiction has attached to a person or thing, it is—unless there is some provision to the contrary—exclusive in effect until it has wrought its function."

Judge DILLON, in the case of *U. S.* v. *Van Fossen,* 1 Dill. 411, says:

"If a person is in the actual custody of the United States for the violation of its laws, no state can, by *habeas corpus* or any other process, take such person from the custody of the federal tribunal or officer. So, on the other hand, a person in custody, under the process or authority of a state, is by express enactment beyond the reach of the federal courts or judges, citing the judiciary act."

In the case of *State* v. *Horn,* 70 Mo. 466, the supreme court approvingly cite the cases of *Van Fossen, Devine,* and *Taintor, supra,* and based their opinion thereon.

But it is argued by the district attorney for the United States that these authorities are not applicable to the case under consideration, citing in support section 1840, Rev. St. Mo. 1879. This is a new section, and was not in force when the decisions quoted were made. This section is as follows:

"If, without sufficient cause or excuse, the defendant fails to appear for trial or judgment, or upon any other occasion when his presence in court may be lawfully required according to the condition of his recognizance, the court must direct the fact to be entered upon its minutes, and thereupon the

recognizance forfeited, and the same shall be proceeded upon by *scire facias* to final judgment and execution thereon, although the defendant may be afterwards rearrested on the original charge, unless remitted by the court for cause shown."

It is claimed that the terms employed, "without sufficient cause or excuse," were intended to meet cases like the present. The intention of the section in the main would seem to be to lay down definite rules for declaring forfeitures or recognizances and for proceedings to enforce them. Without undertaking to give a definite construction to the section of the statute under consideration, I strongly incline to the opinion that it applies to the present case. But whether it does or not, my views, aside from the statute, are that in a case where the bondsmen are not charged or being chargeable with neglect, and a court of competent jurisdiction wrested the prisoner from them, that this is, in the language of the authorities, "an act of the law," and can be set up in defense to a suit on the bond. The sureties being able to do this, they cannot be injured by the removal. So far, then, as the sureties of James are concerned, treating their obligation from a mere legal standpoint, they incur no responsibility, and their obligations and rights do not stand in the way of a removal. But it is otherwise with the state. Its release has already been discussed, and the implied rights of the state shown. These rights sufficiently appear and are brought to the attention of the judge by the joint jailers, the sureties, and cannot be ignored.

In addition to what has already been said on this branch of the case may be added, that the state, by taking bail, does not undertake to condone or pardon the offense on account of which bail was taken, nor did it thereby barter away its obligation to execute the law. That duty remains, and the means necessary for fulfilling it ought not to be taken away or interferred with. The state of Missouri having first obtained jurisdiction of Frank James, has the right to hold him until, in the language of the supreme court of the United States in the *Taintor Case*, its jurisdiction is exhausted. This is necessary to avoid unseeming conflicts between federal and state authorities. It is implied, however, that the authorities of the state will proceed *bona fide* with the trial of the offender and turn him over to the federal authorities as soon as the laws of the state have been satisfied. No presumptions that claim to the custody of the defendant, James, is made for the purpose of shielding him against the Alabama prosecution—whatever appearances may indicate,—will be indulged in.

Under the views as presented, the application for an order of removal will be denied and Frank James turned over to his sureties on the bail bond that they may be able to produce him in court, and the state fully resume its jurisdiction over him for the purpose of satisfying its laws. While the federal authorities thus suspend the enforcement of its process in favor of the state of Missouri, they will not be derelict in their duty to see to it that the purpose for which it

is done shall not defeat the rights of the government of the United States to enforce its own laws.

The order will be that Frank James be released and turned over to his bondsmen.