In re BEAVERS.

(Circuit Court, E. D. New York. June 29, 1904.)

1. CRIMINAL LAW—BAIL—EXONERATION—REMOVAL OF ACCUSED.

Where accused was prevented from appearing to answer an indictment for a federal offense in a certain district by reason of his having been removed by the court for trial under an indictment in another district, such removal operated to exonerate the bail for his appearance.

2. SAME—OBJECTIONS TO REMOVAL.

Where, pending a hearing for the removal of an accused from one federal district to another, an application for removal to a third district was filed, the government, though not entitled to pursue both antagonistic proceedings for removal, was entitled to drop the one last commenced, and, after securing custody and arraignment of accused in the district to which removal was first asked, prosecute a new proceeding to remove him to the district to which a removal was desired to be effectuated by the second proceeding.

3. SAME—SEVERAL PROCEEDINGS FOR REMOVAL—DISCONTINUANCE—ELECTION.

Where a federal prisoner was removed to a certain district for trial on an indictment pending against him in such district, he could not object to a second proceeding by the United States to remove him to another district for trial on an indictment pending against him in such district before he had been tried on the indictment in the district to which he was first removed; such removal not being prejudicial to his rights.

See 125 Fed. 988.

Morgan & Seabury (William M. Seabury, of counsel), for petitioner.

Charles H Robb Asst. Atty. Gen., William J. Youngs, U. S. Atty., and Thomas Ives Chatfield, Asst. U. S. Atty.

THOMAS, District Judge. In Re Beavers (D. C.) 125 Fed. 988, it appears from the opinion of Judge Holt as follows:

"The petitioner was indicted by the federal grand jury in the Eastern District of New York. A warrant for his arrest was issued by the judge of that district, * * * but he was not found within that district. An application was thereupon made to Samuel M. Hitchcock, a United States commissioner in the Southern District, for a warrant for his arrest and removal. A warrant was issued by the commissioner, under which the petitioner was arrested and brought before him. The petitioner demanded an examination, and gave bail for his appearance before the commissioner. Subsequent to the finding of the indictment in the Eastern District of New York, another indictment against the petitioner was found by the grand jury of the District of Columbia. A bench warrant was issued by the Supreme Court of the District of Columbia for his arrest under the indictment, but, not being found within the District of Columbia, another application was made to Commissioner Hitchcock, in the Southern District of New York, for his arrest and removal under the second indictment. A warrant on this second application was issued by the commissioner, under which he was arrested by the marshal of the Southern District of New York, and brought before the commissioner. The petitioner thereupon demanded an examination, and was again admitted to bail by the commissioner. The bail given upon the second arrest under the warrant issued upon the indictment in the District of Columbia subsequently surrendered the petitioner to the marshal for the Southern District of New York, and thereupon the petitioner filed a petition in this court for this writ of habeas corpus, alleging that his second arrest was illegal."

The learned judge determined that the arrest on the second warrant should be vacated. Thereafter such proceedings were had that the defendant, at all times resisting, was ordered to be removed to the Eastern District of New York, and gave bail for his appearance in the Circuit Court held in that district. He duly appeared, and, being arraigned for pleading to three indictments found against him by the grand jury for the Eastern District of New York, moved to quash the indictments, and for a bill of particulars. But before such motions were heard, the defendant, after this court was duly advised of the purpose so to do, was arrested upon a warrant issued by a United States commissioner for the Eastern District of New York for the purpose of removing him to the District of Columbia. He was not physically detained upon such warrant pending the inquiry before the commissioner. The Circuit Court for the Eastern District of New York deferred the hearing of the motions pending the hearing before the commissioner, for the purpose of allowing the warrant to be served upon the defendant, and to permit the proceedings to continue before the commissioner. Thereafter the petitioner applied for a writ of habeas corpus, which was granted by this court; the petitioner having been surrendered to the marshal, who thereupon brought him to the court pursuant to the writ. The parties have been heard. The learned counsel for the petitioner has, by oral argument and brief; clearly set forth the petitioner's position, which is that the commissioner had no power to issue the warrant, pending the disposition of the indictment in the Eastern District, for the purpose of removing the petitioner to the District of Columbia, and that,

even if such power existed, the court should not allow such proceedings for removal until justice in its own jurisdiction shall have been administered. The contention that the commissioner has no power to entertain the proceeding is sought to be supported upon the well-known principle that the justice of one sovereignty must be satisfied before it will yield to the demands of another government for the purpose of administering its justice. Perhaps the true statement is this: It is within the power of a government, acting through the proper department thereof, to refuse to surrender either property or persons to another government while the administration of justice within its own borders demands their presence. Taylor v. Taintor, 16 Wall. 366, 21 L. Ed. 287. A state has full power to demand that a person arrested upon a civil or criminal process within its border shall remain amenable to its courts until there has been due administration of justice therein. But it will be observed that the exercise of this power is at the will of the state itself, expressed through its proper officers or tribunals, and that the person apprehended may not constrain such government, so having jurisdiction, to exercise its will, although for the purpose of preserving his bail from forfeiture, or to save other default, he or his sureties should resist any attempt of any government to remove him from the control of the jurisdiction to which he is primarily bounden. But if he has not done or suffered anything bringing him in default, or if the government first acquiring jurisdiction consents to his removal, and the defendant by removal is prevented from meeting his obligation to such government, he is no longer bound to respond. The rule of continuing obligation to the state having the person or thing in its actual or constructive control is not for the benefit of the defendant, but for the protection of public justice within that state. It is a right that it alone may assert, although it is clearly the duty of the defendant to ask it to assert such right, that his bond may be relieved in case of refusal or waiver. In Taylor v. Taintor, supra, Mr. Justice Swayne states:

"It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law. Where the principal dies before the day of performance, the case is within the first category. Where the court before which the principal is bound to appear is abolished without qualification, the case is within the second. If the principal is arrested in the state where the obligation is given, and sent out of the state by the Governor, upon the requisition of the Governor of another state, it is within the third. In such cases the Governor acts in his official character, and represents the sovereignty of the state in giving efficacy to the Constitution of the United States and the law of Congress. If he refuse, there is no means of compulsion. But if he act, and the fugitive is surrendered, the state whence he is removed can no longer require his appearance before her tribunals, and all obligations which she has taken to secure that result thereupon at once ipso facto lose their binding effect."

Observe the words, "In such cases the Governor acts in his official character, and represents the sovereignty of the state," etc. It is quite clear that it is for the Governor of the state, upon requisition, to determine whether the public justice of his state shall be administered, before permitting the defendant to be subjected to the

laws and tribunals of another state. He acts for the state, and his act binds the state in its several departments. But even if it be within the power of a court having jurisdiction of a defendant to thwart the command of the executive, as the defendant claims was done in Hobbs v. State, 22 S. W. 1035, 40 Am. St. Rep. 782, by the Court of Criminal Appeals of Texas, yet the court itself has the power to subject its own administration to that of a foreign state. But wherever the power of removal may reside, the question involved is whether one government shall yield precedence to another, in the matter of the custody of the same defendant, for the purposes of trial. In the case at bar no such question exists. The United States is the common sovereign, whose judicial power is vested in courts created by the Constitution or laws made pursuant thereto, and for convenience judicial departments and districts, subdividing the whole territory, have been established. The accuser in each artificial division of territory, wherein there is a localized court, is the same. Its general penal statutes are usually common to the whole public domain. Its justice alone is to be administered. "The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may, from time to time, ordain and establish." But the sovereignty offended in criminal cases is always the United States, and the courts to whom the Constitution and Congress have confided the inquiry belong to one of the principal departments in which the governmental power resides. But the court acts only when the sovereign accuses, and the only constitutional limitation upon the general government, as to locality of action, is that the accused shall be tried "by an impartial jury of the state and district wherein the crime shall have been committed." Article 6, Amendments. Hence the national government is one sovereign, common to all judicial districts. Whether the laws have been violated in the Eastern District of New York, or the District of Columbia, the same political body has been offended. It alone seeks vindication. Hence it is quite obvious that no question can arise similar to that where one government seeks to take a person from another jurisdiction, and each demands vindication of its own justice. But as a state may consent to make its own demand secondary to that of another state, so the United States may yield, or may decline to yield, its rights first to vindicate its law, and surrender the accused to another power. Much the more may it select in what order it will prosecute offenses against itself. As in the case of a person seized by the state for violation of its laws, the state, and not the person, may determine whether the criminal justice of that state shall be first administered, before the surrender of the offender to another government for trial. So the federal government may determine the order of priority of trials for offenses against it, or whether there shall be any trial at all. The relative power of the executive or court to decide the order of arraignment does not seem difficult. If the executive department, acting through the Department of Justice, seeks the aid of the court to effect a removal to another district, it would be quite within the power of the court to retain the control of the defendant for the purpose of trial within its

131 F.—24

district. But Congress has vested the initial power of prosecution in the District Attorney (section 771, U. S. Rev. St. [U. S. Comp. St. 1901, p. 601]), and has subjected him to the "general superintendence and direction" of the Attorney General (section 362, U. S. Rev. St. [U. S. Comp. St. 1901, p. 208]), who in his turn is the head of the "executive department to be known as the Department of Justice" (section 346, U. S. Rev. St. [U. S. Comp. St. 1901, p. 202]). And when, as in the present instance, the Attorney General asks that the defendant be removed to another district to meet an indictment against him there found, and the district attorney of this district co-operates for such removal, the court may, at least in the exercise of a sound judgment, permit such removal upon a proper case being made therefor. This does not mean that a defendant may be removed to another district, under conditions which would disturb the due administration of justice in the court where the defendant is held at the time, nor where the removal would work an injustice to the defendant in respect to the indictment pending in such court. In the case at bar it does not appear that the defendant will be injured by the removal, as to the indictment in this court. It is true that the Constitution gives him a right to a speedy trial, but it gives him a right to a speedy trial in the District of Columbia, as well as in the Eastern District of New York. The Constitution does not assure him the speedier trial in this district, nor enable him to select the court in which he shall first be tried. The vigor of his late struggle to prevent removal to this district does not harmonize with a desire for a speedy trial here. His absence defeated a possible trial at the May term, and another opportunity will not occur before October. The administration of justice elsewhere should not be delayed by his tardy appearance in this court.

Judge Holt held that the two proceedings in the Southern District for removal to two several and distinct districts could not concur. The learned judge did not decide that, after his removal to this district should have been perfected, he could not be removed to the District of Columbia, but pointed out that it was illogical to ask the commissioner to hold him for removal in two different directions at the same time. It may be that the learned judge would have been justified in deciding that the commissioner was simply asked to hold the defendant for removal, but that he had no power to order removal, and that the question of the district to which he should be sent should await application to the court for his actual removal. But Judge Holt's solution of the question before him was direct, convenient, and practical. Why should the same commissioner be engaged in determining the question of holding for removal to different districts, when the defendant could be removed to but one; and why should the government and the defendant be at the expense and difficulty of determining the matter of a double removal, when but a single removal was possible? Moreover, as this court had first asked for his removal to this district, it was quite within the power of the District Court for the Southern District of New York to award priority to such demand. It will, however, be noticed that the government was not asking that court to award priority to the

court in the District of Columbia; but to allow the commissioner to conduct two separate proceedings, looking to the removal of the defendant in two opposite directions. The government, at the instance of district attorneys of two distinct districts, was pursuing two antagonistic inquiries at the same time, when it was evident that one or the other of the inquiries must prove useless. It is not perceived that the question decided by Judge Holt has any bearing upon the power of this court to release its control of the defendant. It is in its discretion to retain him for trial, or to send him elsewhere for arraignment. The Executive Department asks that he be sent elsewhere. No valid reason appears for rejecting its advice. It is urged that the government elected to remove the defendant to this district, and that it should be bound by it. The proceeding for removal to this district was first taken, and that for removal to the District of Columbia followed. Judge Holt held that the second could not proceed with the first pending. Therefore he vacated the arrest in the second proceeding. Thereupon the government had the alternative of dropping the proceeding for removal to this district, and renewing the other, or of pursuing the first, bringing the defendant to this district, securing his custody and arraignment here, and thereafter removing him to the District of Columbia for arraignment on the indictment there. In this manner an orderly opportunity of bringing the defendant into the several courts, where he was accused, was secured. In any case it is considered that the government is not precluded now from instituting proceedings for removal to the other district. This court was advised by the district attorney of the proposed removal proceedings, and acquiesced in them. In view of the defendant being under bail for his continuing appearance at this court, the commissioner neither required him to give bail, nor to be imprisoned. As regards the commissioner, the defendant was free, and delivered himself up to the marshal, that he might be brought up on this writ. This may have no legal importance, but illustrates that he was not burdened. It is concluded that the commissioner has power to entertain the proceedings before him, and that this court is advised of no state of fact that requires it, in its discretion, to vacate or restrain them.

The writ should be dismissed.