STATE OF NEBRASKA, APPELLEE, V. DEAN LIAKAS ET AL., APPELLANTS.

86 N. W. 2d 373

Filed November 29, 1957. No. 34211.

*O'Sullivan & O'Sullivan,* for appellants.

*Clarence S. Beck,* Attorney General, and *Ralph D. Nelson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Dean Liakas, herein referred to as appellant, was convicted of the crime of burglary on two counts in the district court for Douglas County. He was adjudged November 9, 1954, to be confined in the Nebraska State Penitentiary. He prosecuted error proceedings to this court. The judgment was affirmed and the district court was commanded to enforce it. Liakas v. State, 161 Neb. 130, 72 N. W. 2d 677. The mandate of this court was issued May 11, 1956, and filed in the district court the next day.

This court in error proceedings allowed a writ of error and allowed appellant, as the plaintiff in error, to be released from custody pending the error proceedings upon his entering into a bond to be fixed by the district court for Douglas County. That court required

a bond in the sum of $5,000. Appellant as principal and The Summit Fidelity and Surety Company as surety entered into, subscribed, and acknowledged a bond in that amount before that court November 12, 1954, in form as required by law. It was approved and made of record in the office of the clerk and appellant was released from custody pending the proceedings in error. The bond required appellant to prosecute the proceedings to effect, to appear personally in the district court for Douglas County from day to day and from term to term, not to depart from said county without leave, and to abide the final judgment enjoined upon him in said cause.

The surety filed an application in the district court for Douglas County June 5, 1956, for exoneration from and discharge of the bail evidenced by the bond, the substance of which is that: The Governor of Nebraska on March 11, 1955, issued a warrant for the arrest of appellant and granted extradition of him to the State of Iowa upon a requisition of the Governor of that state. Appellant was on or about April 9, 1955, removed from Nebraska and was taken to Iowa by the authorities of that state under and by virtue of the authority vested in them by the extradition warrant issued by the Governor of Nebraska. The removal of appellant from Nebraska to Iowa was without his approval or consent and without the approval or consent of the surety. The removal of appellant from Nebraska and its jurisdiction was against the protest of the surety made to the county attorney of Douglas County, the Attorney General, and the Governor of Nebraska before the removal of appellant to Iowa. The act of the Governor of Nebraska granting extradition of appellant to Iowa was such an interference with the custody of appellant by the surety as to discharge and exonerate the bond and the surety is entitled to discharge and exoneration of its bond and all liability thereon.

Appellee filed on June 6, 1956, a motion for an order

forfeiting the bond. A hearing was had on the application of the surety and the motion of the State. The bail bond was forfeited and the application of the surety for exoneration and discharge of the bond was denied. Judgment was rendered August 22, 1956, against the surety and in favor of the State on the bond for $5,000. A motion of the surety for new trial was denied. This appeal contests the correctness of the action of the district court rejecting the application of the surety, granting the motion of the State, and rendering judgment for the penalty of the bond against the surety and in favor of the State.

Evidence was presented on the hearing above mentioned, the relevant parts of which follow:

The Governor of Iowa on March 10, 1955, requested the Governor of Nebraska to have appellant apprehended and delivered to a named person who was authorized to receive appellant and to convey him to Iowa to be dealt with according to law in reference to a charge of burglary against him in that state. The surety made objections to the Governor of Nebraska in reference to the request that appellant be delivered to Iowa. The surety related the facts concerning the conviction of appellant for a felony in Nebraska and the pendency of the case in this court to review his conviction; the giving of a bond by the surety for his release from custody during the pendency of the appellate proceedings; and the legal right of the surety to the custody of appellant in Nebraska during the continuance in effect of the bail bond and until the final disposition of the case then pending in this court. The surety charged that the surrender of the jurisdiction of appellant by Nebraska and his removal to Iowa would prejudice the rights and increase the liabilities of the surety and that it would be violative of the position and responsibility of the surety as the custodian of appellant. The surety asked that the request of the Governor of Iowa be denied, that Nebraska continue its jurisdiction of appel-

lant until decision by this court of the case involving him, and that he be permitted to perform the obligation of his bond and abide the final decision in the pending case.

The Governor of Nebraska honored the requisition and issued a warrant on March 11, 1955, authorizing the arrest and extradition of appellant to Iowa. Appellant was by virtue thereof taken from Nebraska to Iowa.

A bail bond is a contract between the surety therein and the State to the effect that the accused, the principal in the bond, will appear in court when required and that he will comply with all the conditions of the bond. The surety may relieve himself of liability at any time by surrendering the principal in a legal manner. The giving and acceptance of a bail bond and the discharge of the accused are effective to transfer his custody from the officer who has him in charge to the surety on the bond who becomes the keeper or jailer of the accused by his selection. The dominance of the surety over the accused is a continuance of the original imprisonment. It is a principle of general acceptance and application that the surety in a bail bond has control and custody of the principal until the surety is discharged or excused for good cause recognized by law. If the surety elects, he may at any time selected by him seize and forcibly arrest the principal and deliver him up in discharge of the obligations of the surety. State ex rel. Smith v. Western Surety Co., 154 Neb. 895, 50 N. W. 2d 100; Reese v. United States, 9 Wall. 13, 19 L. Ed. 541; Taylor v. Taintor, 16 Wall. 366, 21 L. Ed. 287; Cooper v. State, 5 Tex. App. 215, 32 Am. R. 571; United States v. Vendetti, 33 F. Supp. 34; Miller v. Commonwealth, 192 Ky. 709, 234 S. W. 307; 6 Am. Jur., Bail and Recognizance, § 100, p. 100.

There is an implied covenant in the contract between the surety and State that it will not interfere with the right of the surety to retain the principal in his custody

or with the right of the surety to discharge himself as bail by taking the principal into actual custody and surrendering him in satisfaction of the bond. Miller v. Commonwealth, *supra;* 8 C. J. S., Bail, § 79, p. 152.

It is generally said that a surety on a bail bond is excused and a forfeiture of the bond will be vacated if the performance of the obligations of the bond is made impossible by an act of God, of the public enemy, of the law, or of the obligee. State v. Wynne, 356 Mo. 1095, 204 S. W. 2d 927; State v. Pelley, 222 N. C. 684, 24 S. E. 2d 635; Taylor v. Taintor, *supra;* 6 Am. Jur., Bail and Recognizance, § 172, p. 132; 8 C. J. S., Bail, § 76, p. 147.

It is the duty of the Governor of a state to have arrested and delivered to the executive authority of any other state of the United States any person charged in the latter state with treason, felony, or other crime, who has fled from justice and is found in the former state. Art. IV, § 2, Constitution of the United States; § 29-702, R. R. S. 1943. However, under the circumstances of this case, when requisition for appellant was made on the executive of Nebraska, this State had exclusive jurisdiction of appellant until the demands of its laws were satisfied. There was no authority that could compel the State to waive or surrender its jurisdiction of him but the Governor of Nebraska could voluntarily elect to waive such jurisdiction by the State and surrender appellant to Iowa. This the Governor did. His act was that of Nebraska and it was bound thereby. The effect was that Nebraska then lost jurisdiction of appellant.

In State ex rel. Falconer v. Eberstein, 105 Neb. 833, 182 N. W. 500, this court said: "Where a person is charged in two states with the commission of a separate offense in each, and has been arrested in one of them, such state has exclusive jurisdiction of the alleged offender until the demands of its laws are satisfied. Nevertheless the governor of such state may honor the

requisition of the governor of a demanding state and such surrender of the prisoner will operate as a waiver of the jurisdiction of the asylum state."

People ex rel. Barrett v. Bartley, 383 Ill. 437, 50 N. E. 2d 517, 147 A. L. R. 935, concluded: "Where a prisoner serving a sentence is extradited as a fugitive from justice and delivered to another State * * *, jurisdiction over his person is waived by the asylum State, the waiver of jurisdiction being a prerogative of the Governor, and his extradition warrant takes priority over all State process by which the fugitive is held."

In Ex Parte Guy, 41 Okl. Cr. 1, 269 P. 782, it is related that: "The prisoner was convicted of a felony in the district court of this state and sentenced to imprisonment in the penitentiary; he was committed under such judgment and was undergoing sentence; the Governor of this state * * * ordered the delivery of such convict to the federal authorities, with the only condition that he be returned to the state authorities after conviction and satisfaction of the judgment in the federal court. Under such executive order, the convict was delivered to the federal authorities, was convicted, and discharged the judgment imposed in the federal court. Held, that * * *, notwithstanding the condition contained in such instrument, it became absolute upon the surrender of the convict to the federal authorities."

In Taylor v. Taintor, *supra,* the language used in referring to this subject is: "It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law. * * * If the principal is arrested in the State where the obligation is given and sent out of the State by the governor, upon the requisition of the governor of another State, it is within the third. In such cases the governor acts in his official character, and represents the sovereignty of the State in giving efficacy to the Constitution of the United States and the law of Con-

gress. If he refuse, there is no means of compulsion."

The doctrine has frequently been recognized and applied that a surety on a bail bond is discharged from liability thereon by the action of the obligee in the bond waiving jurisdiction of the prisoner and surrendering him to another sovereignty because of an offense committed by him there. In such a situation it is considered that the inability of the surety to produce the principal is caused by an act of the law or by an act of the obligee and that the action of the State is such an interference with the custody of the principal by the surety as to exonerate him on the obligation of the bond.

In Beavers v. Haubert, 198 U. S. 77, 25 S. Ct. 573, 49 L. Ed. 950, the court referred to Taylor v. Taintor, *supra,* in this manner: "The question in the case was the effect on the bail of a defendant given to a State by the action of its Governor, sending him out of the State under extradition proceedings. It was held that his bail was exonerated. The court said: 'It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law.' And the act of the Governor of a State yielding to the requisition of the Governor of another State was decided to be the act of the law. It was further said: 'In such cases the Governor acts in his official character, and represents the sovereignty of the State in giving efficacy to the Constitution of the United States and the law of Congress. If he refuse there is no means of compulsion * * *'. This case establishes that the sovereignty where jurisdiction first attaches may yield it, and that the implied custody of a defendant by his sureties cannot prevent. They may, however, claim exemption from further liability to produce him.'"

Reese v. United States, *supra,* considered a stipulation made by the government and the accused that he need only appear at such term of the court as might be held after the happening of an uncertain event. The

recognizance required him to appear at any subsequent term following the then next term in regular succession. It was concluded by the court that the effect of the stipulation was to supersede the condition of the recognizance. The opinion continues: "If, now, we apply the ordinary and settled doctrine, which controls the liabilities of sureties, it must follow that the sureties on the recognizance in suit are discharged. * * * It is true, the rights and liabilities of sureties on a recognizance are in many respects different from those of sureties on ordinary bonds or commercial contracts. * * * But in respect to the limitations of their liability to the precise terms of their contract, and the effect upon such liability of any change in those terms without their consent, their positions are similar. And the law upon these matters is perfectly well settled. Any change in the contract, on which they are sureties, made by the principal parties to it without their assent, discharges them, and for obvious reasons. When the change is made they are not bound by the contract in its original form, for that has ceased to exist. They are not bound by the contract in its altered form, for to that they have never assented. Nor does it matter how trivial the change, or even that it may be of advantage to the sureties. They have a right to stand upon the very terms of their undertaking."

In United States v. Vendetti, *supra*, it is said: "It is possible to deduce from the early cases of Reese v. United States, 9 Wall. 13, 19 L. Ed. 541, and Taylor v. Taintor, 16 Wall. 366, 369, 21 L. Ed. 287, the rule that if the sovereignty to which the recognizance bond is given renders impossible the performance of the obligation, the surety will be absolved from all liability on the bond. Both cases proceed on the theory that when bail is given, the principal is regarded as delivered to the custody of the surety. If the obligee's acts deprive the surety of this custody, it cannot enforce a forfeiture if the principal fails to appear according to the conditions

of the recognizance. * * * In Taylor v. Taintor, supra, it is also said to be settled law that the bail will be exonerated if performance is rendered impossible by an 'act of the law.' Thus, the liability of the surety is terminated if a governor of the state in which the bond was given responds to a demand from another state for the surrender of the defendant * * *, or a court consents to the removal of the defendant to another jurisdiction * * *. From these decisions, it is clear that a surety may claim exemption from further liability if the sovereignty whose jurisdiction first attaches surrenders the principal to another sovereignty. The implied custody of the principal by his surety cannot prevent the surrender."

The court in People v. Moore, 4 N. Y. Cr. 205, referred to Reese v. United States, *supra,* and Taylor v. Taintor, *supra,* and concluded: "A defendant held under bail was without the knowledge or consent of his bail arrested under a warrant of the governor of this State on a requisition issued by the governor of New Jersey, and was extradited thereunder and delivered to the authorities of the State of New Jersey: Held, that the bail was exonerated and discharged."

Ex Parte Hansen v. Edwards, 210 Mo. App. 35, 240 S. W. 489, states: "The fact that petitioner was under bond to appear for trial upon a criminal charge in asylum State would not invalidate the action of the governor thereof in honoring the requisition, the fugitives bail being exonerated by the action of the governor in sending the accused out of the state on requisition."

In State v. Pelley, *supra,* the court said: "The appellant herein, Carrie Thrash Dorsett (the surety), is not entitled to the relief she seeks unless she can show that the performance of her undertaking has been rendered impossible or excusable (a) by an act of God; (b) by an act of the obligee; or (c) by an act of law. * * * if the party has been arrested in the State where the obligation is given and sent out of the State by the Gov-

ernor upon requisition from another State or other foreign jurisdiction, the case falls within the third category."

In In re James, 18 F. 853, it is said: "The removal of a prisoner by a court of competent jurisdiction beyond the control of his bondsmen, thus rendering them unable to produce the prisoner at the time and place set for trial, as undertaken by the conditions of the bond, is, in the language of the authorities, 'an act of the law,' and can be set up in defense to a suit on the bond."

State v. Adams, 40 Tenn. 259, was to enforce the penalty of a bail bond against the surety. The surety as a second defense said that the principal in the bond had been demanded by the Governor of South Carolina and delivered over by the Governor of Tennessee before the term at which the defendant was bound to appear. A demurrer to this plea was sustained. The court in deciding the ruling was wrong used this language: "But the second plea, if true, was a good defence, according to the case of The State v. Allen, 2 Humph. 258. This position, though much controverted, and elaborately and learnedly examined at the time by the court and counsel, is no longer an open question."

Adler v. State, 35 Ark. 517, 37 Am. R. 48, states: "This (a recognizance) is like any other contract * * *, performance of which is excused by the act of the law * * *. Imprisonment of the principal for crime, therefore, will generally release the bail, the state having taken him out of their possession; and so will the surrendering of him to the authorities of another state as a fugitive from justice."

The court said in United States v. Marrin, 170 F. 476: "Marrin and his surety would have been wholly protected had he remained in the Eastern district of Pennsylvania until the time for his appearance in this court. If he had remained within this jurisdiction, he could not have been removed on a warrant of arrest from any other jurisdiction without an order of court.

If the court had concluded, as it did in the Beavers Case (C. C.) 131 Fed. 366, that justice demanded his removal, such an order would at the same time relieve his sureties from liability for his appearance. It would be an act of the law, putting it beyond his power to appear in accordance with the condition of his recognizance; * * *." See, also, Ex Parte Youstler, 40 Okl. Cr. 273, 268 P. 323; Annotation, 4 A. L. R. 2d 454; 6 Am. Jur., Bail and Recognizance, § 187, p. 140.

The obligee in the bond voluntarily surrendered its jurisdiction of the principal, terminated the custody by the surety of the principal contrary to its obligation in reference thereof, required the principal to violate his duty not to depart from Douglas County, and sent him by force of law and its processes from this state to Iowa. The surety was thereby exonerated of and relieved from any obligation or liability on account of the bail bond involved in this litigation.

The doctrine of strict construction prevails concerning the liability of a surety on a bail bond and he cannot be subjected to liability beyond the strict scope of his engagement. Once a surety is discharged, liability cannot be revived without his consent. Nichols v. United States, 22 F. 2d 8; Reese v. United States, *supra;* People v. Meyers, 215 Cal. 115, 8 P. 2d 837; State ex rel. Vigg v. Romaine, 47 Okl. 138, 148 P. 79; 8 C. J. S., Bail, § 76, p. 147.

The judgment should be and it is reversed and the cause remanded with directions to the district court for Douglas County to render and enter a judgment in favor of the surety and against the State.

REVERSED AND REMANDED WITH DIRECTIONS.