**Robert E. McCALEB, Jr., Plaintiff,**

**v.**

**PEERLESS INSURANCE COMPANY, a corporation, and A. L. Vinci, Defendants.**

**Civ. No. 01163.**

United States District Court
D. Nebraska.

July 30, 1965.

David S. Lathrop, Omaha, Neb., for plaintiff.

L. J. Tierney, Omaha, Neb., for defendants.

ROBINSON, Chief Judge.

This action was instituted by Robert E. McCaleb, Jr., to recover damages for alleged false arrest and imprisonment and illegal detention as well as a violation of liberties under the United States Constitution pursuant to 42 U.S.C.A. § 1983. The plaintiff is a citizen and resident of the State of California; the defendant A. L. Vinci is a citizen and resident of the State of Nebraska; the defendant Peerless Insurance Company is a corporation organized and existing under the laws of New Hampshire with its principal place of business in that state. Jurisdiction exists in this Court under the provisions of 28 U.S.C.A. § 1331.

It has been stipulated that the defendant Vinci was the duly authorized agent of the defendant Peerless Insurance Company and at all times herein referred to was acting within the scope of his authority as agent. Hereafter where the term bondsman or "Vinci" is used it shall mean and refer to both defendants.

On March 31, 1960, the plaintiff was taken into custody by members of the

Omaha Police Department for violation of certain traffic laws. Bond was set in the amount of $200. The defendant Vinci wrote a $200 appearance bond for the plaintiff in the Municipal Court of the City of Omaha on the same day. Vinci represented the defendant Peerless Insurance Company in writing the bond. The bond was returnable on the following day, April 1, 1960, but the plaintiff's attorney arranged to have the hearing continued until April 8, 1960.

Plaintiff and his wife left Omaha for California sometime around the 6th of April. They got as far as Durango, Colorado, where an argument ensued between plaintiff and his wife, and she returned to Omaha. McCaleb continued on to California where his parents lived. He was not in court on April 8 and his attorney was able to continue the case for another two weeks until April 22, 1960.

It is the time after this preliminary background which is most relevant to this case. Obviously concerned that he or his company would lose some money on the forfeiture of a bond and apparently worried that other individuals for whom he wrote appearance bonds would take McCaleb's way out, Vinci proceeded to California to apprehend McCaleb after first making some unsuccessful attempts to gain security for the bond in Omaha. Around noon of April 16, a Mr. Bridges, a California bondsman acting as agent for Vinci, arrested plaintiff at his parents' home in San Pablo, California, and took plaintiff to jail.

The evidence is contradictory as to the exact method used, but Vinci was able to gain control of McCaleb's 1959 Ford convertible. Some sort of wire-jump device was used to start the car, but whether or not McCaleb was willing to allow Vinci to have his car is not clear. After Vinci had gained control of McCaleb's car, he took McCaleb out of jail and for approximately eighty [80] hours there ensued a series of trips throughout California, McCaleb being placed, at different times, in jail at Santa Barbara and Burbank and spending some time at the home of some of Vinci's relatives. Mc-

Caleb was detained by shackles around his waist and wrists at all times that he was not actually in jail. Thus, eighty [80] hours after the plaintiff had been taken into custody by Vinci, he was no closer to the court in Omaha, Nebraska, the place at which the bond required Vinci to deliver McCaleb, than he was when he was first apprehended.

Throughout this entire period, Vinci was busy on the telephone attempting to find someone who was willing to secure him both for the appearance bond and for his expenses in going to California. Apparently his demands on McCaleb's parents and others that he called increased in amount as his expenses mounted throughout this episode. Calls were made to Lincoln, Nebraska, and to Omaha from the west coast in an attempt to gain some sort of security.

After this series of unsuccessful attempts to gain payment or security, Vinci started back for Omaha, driving McCaleb's automobile. The plaintiff was released from his shackles during this trip and offered no resistance, but was incarcerated in a local jail whenever a stop was made for rest. Vinci provided the necessary meals for the plaintiff on this return trip.

They arrived in Omaha in the afternoon on April 21, where the plaintiff was taken to Vinci's office, once more in restraints. Mrs. McCaleb was telephoned at a school where she was taking comptometer training and she immediately came over to Vinci's office. This was the first time she had seen her husband since their argument in Colorado, and she testified that he was dirty, needed a shave, appeared to have lost weight and was in handcuffs of some sort.

The defendant Vinci then took the title to McCaleb's automobile, which was then one year old and had a mortgage thereon of about $775. He allowed plaintiff and his wife to spend the night in a hotel, but directed them to appear at his office the next morning. When they arrived at his office the next morning, he took them to the office of an attorney where they executed a bill of sale to the car and a

release of all claims. At that time Mc-Caleb was released and told by the agent Vinci to get out of the State of Nebraska. This was approximately one hour before his appearance time before the Municipal Court of the City of Omaha. The agent never did surrender him to the Court.

It is for us to determine in this case the powers and rights of a bondsman in pursuing a person who has "jumped" bond and gone into another state and having made that determination, to apply the law to the fact situation now before us.

 There is no doubt that a bondsman has the power to arrest and may do so in any state into which his principal may have fled in the absence of any statute denying that right. 73 A.L.R. 1370 and cases cited therein. We think there is no question that Vinci, the agent, had the right to go to California and arrest his company's principal, McCaleb. However, all of the cases we have read which allow the bondsman to arrest his principal have added the requirement that such arrest be for the purpose of surrendering the principal to the proper authorities for appearance before the court which allowed the bond. State v. Liakas, 165 Neb. 503, 86 N.W.2d 373; State v. Helgerson, 59 S.D. 516, 241 N.W. 325; United States v. Burl, D.C., 67 F.Supp. 583; Taylor v. Taintor, 16 Wall. 366, 18 U.S. 366, 21 L.Ed. 287; 3 A.L.R. 188; 73 A.L.R. 1370. The bondsman has the right to arrest, but only for the purpose of surrender and exoneration of his bond.

 One purpose of allowing a person his liberty by the use of a bond is to prevent such person from being imprisoned for an unnecessary length of time without the Court losing the assurance that such person will appear in court at the appointed time. The bondsman has a duty signified by his written contract to present his principal before the court. This is the basic reason for the rule which gives the bondsman the right to pursue and arrest his principal. Fundamental interests of justice and society require that a surety in a criminal case

be given greater authority than the other types of sureties and bondsmen. But this authority is conditioned on the recognition of his duty to the court to present the principal before the court. If this fundamental condition is not obeyed, the entire purpose for which bonds are given and collaterally the rule vesting broad authority in the bondsman will be effectively thwarted. It is the finding of this Court that whenever a bondsman takes undue advantage of his justly granted and needed authority in violation of his duty to the granting court and such undue advantage results in injury or damage to his principal or another party, that bondsman should and will be rendered liable for any damage caused as a result of an act or acts which would render liable any other person who was not vested with such authority.

 The defendant in this case went to California and arrested the plaintiff under his authority as a bondsman. He returned him to Omaha, but then, in direct and complete disregard for his duty to the Municipal Court of the City of Omaha, he directed the plaintiff to leave this state. This occurred within hours of the time when the plaintiff was to appear before the Municipal Court. Vinci has obviously reached beyond the mantle of protection afforded by the law to a bondsman. The plaintiff was arrested, not for the purpose of surrendering him to the proper authorities, but for the purpose of the financial protection of the defendant against possible loss on the bond. This type of action will not be tolerated by this Court, and had this occurred with respect to a bond given before this Court, the defendant would be forever barred from writing a bail bond in this Court in the future.

 With respect to the written release signed by the plaintiff releasing these defendants from all claims or liability we find that this release was wholly without consideration and is totally lacking in force and effect.

 Concerning the damages to be assessed here, we find that the plaintiff

is entitled to recover the difference between the value of his automobile as ascertained at the sale by auction and the amount of the mortgage on the automobile at the time Vinci gained title to it, and other damages in the total sum of Four Thousand [$4000] Dollars. It is our position that Vinci should not be allowed to profit by his wrongful acts and that the plaintiff is entitled to compensation for the illegal imprisonment imposed upon him by the defendant.

Judgment will be for the plaintiff and against the defendants and each of them for the sum of Four Thousand [$4000] Dollars.

The foregoing shall constitute findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure. Counsel for the plaintiff will prepare and submit an appropriate order of judgment within fifteen [15] days.