STATE OF NEBRASKA, APPELLEE, V. EDWARD DONALD KEN-
NEDY ET AL., APPELLANTS.

227 N. W. 2d 607

Filed April 10, 1975. No. 39677.

Alfred A. Fiedler of Fiedler & Fiedler, for appellant Midland Ins. Co.

Paul L. Douglas, Attorney General, and Robert R. Gibson, for appellee.

Heard before SPENCER, CLINTON, and BRODKEY, JJ., and FLORY and WHITE, District Judges.

SPENCER, J.

This is an appeal from forfeiture of a bail bond in the amount of $25,000, issued by Midland Insurance Company, October 16, 1972, for Edward Donald Kennedy,

pending appeal on his conviction on a charge of burglary with explosives. We affirm.

On January 10, 1973, a mandate was issued to the District Court for Lancaster County, affirming Kennedy's judgment of conviction. Kennedy did not appear and was not produced. A motion for bond forfeiture was sustained on January 19, 1973, and a bench warrant issued. On February 8, 1974, motion was filed for judgment on the bond, and Midland Insurance Company was made a defendant. On March 14, 1974, after hearing, judgment was rendered on the bond.

Kennedy was subsequently apprehended by the F. B. I. in California. He was returned to Lincoln by a Lancaster County deputy sheriff, and was in custody when Midland's motion for new trial or vacation of the judgment was heard. On May 24, 1974, L. S. Cornett, the attorney in fact for Midland, paid the Lancaster County sheriff the expense of returning Kennedy to Lincoln, or $911.21. On June 21, 1974, the trial court overruled Midland's motion for a new trial; gave Midland credit for the $911.21; and rendered judgment for $24,088.79.

Midland, relying on section 29-1107, R. R. S. 1943, and State v. Seaton (1960), 170 Neb. 687, 103 N. W. 2d 833, argues that the District Court abused its discretion in entering judgment for the full amount of the bond less the actual expense of bringing Kennedy back from California. State v. Seaton, *supra,* is not applicable on the facts of the present case. There, Seaton failed to appear for trial and the recognizance was forfeited. A month and a half later, he was surrendered in open court into the custody of the sheriff by the surety. Subsequent to his conviction, the county attorney filed a motion for judgment of default on the recognizance, which was forfeited on the day he was to appear for trial. Here, Kennedy was apprehended by the F. B. I. more than a year after the motion for bond forfeiture was sustained. He was returned from California by local authorities. L. S. Cornett did testify that he spent considerable time

and money in an attempt to locate Kennedy. At the hearing, however, he testified in generalities and produced no actual figures to sustain his guess on expenditures.

State v. Reed (1965), 178 Neb. 370, 133 N. W. 2d 591, is pertinent herein. There we said: "We examine the nature of this obligation, the liability imposed, and the reasons therefor. They are well stated in State v. Morse, 171 Neb. 87, 105 N. W. 2d 572, wherein it is stated: 'If the surety on a bail bond fails to deliver his principal into the custody of the proper officer of the law or to procure his attendance in court as the bond requires, the liability of the makers of the bond for the penalty thereof becomes absolute and the bond should be forfeited. A bail bond is a contract between the surety and the State that if the latter will release the principal from custody, the surety will undertake that the principal will appear personally at any specified time and place to answer the charge made against him; and upon failure of the principal to so appear, the makers of the bond become absolute debtors of the State in the amount of the penalty of the bond. When a surety makes a bail bond it assumes the risk involved if its faith in the principal is misplaced. State v. Honey, 165 Neb. 494, 86 N. W. 2d 187.'

"There is no duty on the part of the State to prove damages. State v. Konvalin, 165 Neb. 499, 86 N. W. 2d 361. The giving of the bond transfers custody to the surety who becomes the keeper or jailer of the accused, the surety's dominance is a continuation of the original imprisonment, the State may not interfere with the surety's control, and the surety may discharge itself from liability at any time by surrendering the accused. State v. Liakas, 165 Neb. 503, 86 N. W. 2d 373."

Section 29-1107, R. R. S. 1943, is as follows: "The court may direct that a forfeiture of the recognizance be set aside, upon such conditions as the court may im-

pose, if it appears that justice does not require the enforcement of the forfeiture."

There is no question but that this provision gives the District Court authority to remit a part or all the penalty of a bail bond in its sound discretion, to be exercised with regard as to what is right and equitable under the circumstances of the individual case.

Kennedy was at large in January 1973, when the mandate was issued. He was still at large more than a year later, in February 1974, when a motion was filed for judgment on the bond, and on March 14, 1974, when, after hearing, judgment was rendered on the bond. Kennedy was subsequently apprehended and returned to Nebraska the day before the hearing on Midland's motion. His apprehension was not the result of any action taken by the surety. He was taken into custody solely and exclusively by virtue of the normal operation of the federal system of criminal justice.

Kennedy had been sentenced to a term of 20 years upon conviction for the offense of burglary with explosives, his seventh felony offense. The risk of his nonappearance after mandate was clearly evident by the amount of the bail bond, $25,000. Certainly the equitable principles called for in the cases cited by Midland might be more arguable if the surety had actively contributed to the ultimate return of Kennedy. The testimony on the surety's efforts to return Kennedy do not indicate any all-out effort to accomplish that purpose. Midland now seeks to escape the liability it undertook by relying on the efforts of the federal system for apprehension of fugitives. This is not a case where the ends of justice have been slightly delayed; rather, they have been frustrated and the orderly purposes of the court have been purposely abused. An habitual criminal already convicted and sentenced was at large for more than 15 months, requiring law enforcement agencies to spend time and money in his apprehension. The defendant was not apprehended until after default judgment

was rendered, and then only a very short time before hearing on Midland's motion for new trial or to vacate judgment. If Midland were to prevail in this case, we would be condoning haphazard bonding procedures and eroding the obligation Midland assumed herein.

The trial court granted remission of the only expense actually supportable on the record. We find the trial judge did not abuse his discretion. The judgment is affirmed.

AFFIRMED.