## Commonwealth v. Allen.

(Decided January 16, 1914.)

### Appeal from Shelby Circuit Court.

1. Criminal Law—Indictment—Trial—Discretion of Court.—Under section 141 of the Criminal Code of Practice, which provides that the court may, where the defendant in an indictment is on bail, order a bench warrant to issue, or commit the defendant to custody and fix the amount of bail to be given by him, it is within the sound discretion of the court to order the bench warrant, or commit the defendant to custody and fix the amount of his bail, or to permit him to stand upon the bond theretofore given in the examining court.

2. Sureties—Rule for Judgment on Bail Bond—Liability—Insanity of Defendant.—Where a defendant in an indictment is on bail and becomes insane and wanders away and fails to appear when reuired by his bond, the surety upon the bond is liable.

3. Sureties—Insanity of Defendant in Bail Bond—When Surety is Released.—It is only in cases where the lunatic has been adjudged of unsound mind, and is in the custody of the State, that the surety is released.

JAMES GARNETT, Attorney General; CHARLES H. MORRIS, Assistant Attorney General; CHAS. H. SANFORD, P. J. BEARD and GEORGE S. PICKETT for appellant.

E. B. BEARD, EDWARDS, OGDEN & PEAK and HOLLAND & DAVIS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

J. Will Allen was arrested in December, 1910, on a warrant charging him with grand larceny. Upon an examination in the county court he was held to answer said charge before the grand jury, and executed a bond

in the sum of $500.00, with Thomas Allen as his surety, for his appearance before the grand jury at the January Term, 1911, of the Shelby Circuit Court. At that term the grand jury returned an indictment against Allen for grand larceny.

The record fails to show that any order was made at the January term, either upon the subject of the return of the indictment by the grand jury, or upon the subject of bail. At the May term, 1911, an agreed order was entered, continuing the case to the next term, the "defendant to remain on the same bond as heretofore." At the September Term, 1911, the case was again continued upon the motion of the Commonwealth to the January Term, 1912, of the court, the "defendant to remain on the same bond as heretofore."

On the night of December 17, 1911, Allen disappeared, and has not been heard of since. At the January Term, 1912, his bond was forfeited, a bench warrant was issued for his arrest, and the case continued to the May Term.

Subsequently, a summons was issued against appellee Thomas Allen, the surety in the bond executed in the county court, to show cause why judgment should not be rendered against him for $500.00, the amount called for by the bond.

In his response to the rule appellee presented three defenses: (1) That he signed the bond in the county court for the appearance of his principal at the January Term, 1911, of the circuit court; that his said principal did so appear; and that the surety never consented to thereafter remain bound on the bond executed before the county judge; (2) that Will Allen, the principal in the bond, had died; and (3) that Will Allen was insane at the time of his disappearance, and had been insane for many months prior thereto.

The circuit court sustained a demurrer to the first and second paragraphs of the response; and a trial upon the issue raised by the third paragraph having resulted in a judgment for the surety, the Commonwealth appeals.

The circuit court was of opinion that the proof did not show that Allen was dead; but that it did show he was insane at the time of his disappearance. Allen left the State without telling any one of his intention of leav-

ing, and in such a way and under circumstances that fully justified the conclusion reached by the circuit court. Treating those findings of fact as established, it becomes necessary to consider only the first and third defenses presented by the response.

1.   Was the surety bound upon the county court bond after the principal in the bond had been indicted by the grand jury, and without the execution of a new bond in the circuit court?

By their bond executed in the county court, the principal and his bail covenanted, "that the above named J. Wm. Allen should appear in the circuit court, on the first day of its next January Term, to answer said charge, and should at all times render himself amenable to the orders and process of said court in the prosecution of said charge, and if convicted should render himself in execution thereof; or if he should fail to perform either of these conditions, we will pay to the Commonwealth of Kentucky the sum of $500.00."

Section 141 of the Criminal Code of Practice, provides as follows:

"Upon an indictment being found, if the defendant be not in custody, nor on bail, the court shall forthwith make an order for process to be issued thereon, designating whether it shall be for arresting or summoning the defendant; and if for arresting the defendant, and the offense charged be bailable, the sum in which he may be admitted to bail shall be fixed. If he be on bail the court may order a bench warrant to issue, or commit him to custody, and fix the amount of bail to be given by him."

It will be noticed that the last clause of the section just quoted does not make it compulsory upon the circuit court to order a bench warrant, or commit the defendant to custody and fix the amount of bail to be given by him, if he be already on bail; on the contrary, it is discretionary with the circuit court to take such action. We have repeatedly held that the term "may," when used in this way, is not to be construed as meaning "must," but leaves the contemplated action within the sound discretion of the court. Commonwealth v. Swanger, 108 Ky., 579; Commonwealth v. Bray, 123 Ky., 339. If the circuit court is satisfied with the bond given in the examining court, it may let the defendant remain on the bail so given. The circuit court might, however, be of

opinion that the amount of the bail taken in the examining court was insufficient, and in such a case it would be its duty to increase the bail and commit the defendant to custody until the larger bond is given.  In the case at bar, however, the circuit court made no order varying the bond required by and given in the county court, and this had the effect of leaving the prisoner stand upon the covenants of his bond there executed; and the failure of the circuit court to take a new bond, or to direct that the defendant should stand under his former bond, did not release the bail from his obligation.  Neither was it necessary for the bail to agree that he should be bound upon the county court bond after the indictment and appearance of the accused in the circuit court, since the law held him bound unless the circuit court required a different bond as provided by section 141 of the Criminal Code, *supra*.

Furthermore, a method of releasing the bail is expressly provided by section 86 of the Criminal Code, as follows:

"At any time before the forfeiture of their bond, the bail may surrender the defendant, or the defendant may surrender himself to the jailer of the county in which the prosecution is pending, but the surrender must be accompanied with a certified copy of the bail bond to be delivered to the jailer, who must detain the defendant in custody thereon as upon a commitment, and give a written acknowledgment of the surrender; and the bail shall thereupon be exonerated."

Under the covenants of the county court bond, the bail was bound for the future appearance of the defendant, until the circuit court should require a different bond, or he bail should surrender the accused in the manner prescribed by section 86 of the Criminal Code.  Yarborough v. Commonwealth, 89 Ky., 153.

The circuit court properly sustained a demurrer to the first paragraph of the response.

2.  Did the insanity and disappearance of the defendant release the surety?

Appellee insists that he is released, because the failure of the principal in the bond to appear was caused by the act of God; and in support of this contention he relies upon Commonwealth v. Fleming, 15 K. L. R., 491, and Wood v. Commonwealth, 17 Ky. L. R., 1076, 33 S. W., 729.  But in both of those cases the defendant had

been adjudged a lunatic by a court of competent juris-
diction; and in the Wood case the defendant was actually
confined in the asylum at the time his bond was for-
feited. In that case, the court said:

"The lunatic was held by the State as such, and in
charge of an officer refusing to deliver him up, and the
penalty should not have been enforced against the bail
in such a state of case, as was held by this court in the
case of Alguire v. Commonwealth, 3 B. M., 340, and
Kirby v. Commonwealth, 1 Bush, 113."

In the Fleming case, the defendant made his escape
while being conveyed to the asylum by the officer having
him in charge; and in releasing his surety, the Superior
Court said:

"In the case before us the principal's appearance
was prevented by the act of the Commonwealth, super-
induced by the act of God. In the interest of its citizens,
the Commonwealth saw fit to have the accused confined
in an asylum. This was, perhaps, as much for the se-
curity of other citizens of the State as it was for the
safe keeping of the lunatic himself. When the accused
was thus confined, he was beyond the reach of the super-
vision of his sureties. They were powerless to take his
body and present it to the court. He was, to use an old
legal phrase, civilly dead. His responsibilities as a man
had for the time being ceased."

In Taylor v. Taintor, 16 Wallace, 366, the court said
that when bail is given the principal is regarded as de-
livered to the custody of his sureties.

And, in Yarborough v. Commonwealth, 89 Ky., 151,
this court said:

"It was no defense to a proceeding upon a forfeited
bail bond that at the time of the forfeiture, the accused
was confined in prison in another State for a crime there
committed, he having voluntarily left this State while
out on bail."

The decision was rested upon the ground that the
bail, having the virtual custody of the accused might
have prevented his departure from the State by a sur-
render of him at any time.

This rule has ever been the law in this country and
in England.

In treating of mainprize and of bail, Pollock and
Maitland, in their "History of English Law," say:

"There was some difference between these two institutions, but at an early time it became obscure. Bail implied a more stringent, mainprize a laxer, degree of responsibility. English, Norman and French tradition seem all to point to an ancient and extremely rigorous form of suretyship or hostageship which would have rendered the surety liable to suffer the punishment that was hanging over the head of the released prisoner. In Normandy these sureties are compared to gaolers, and a striking phrase speaks of them as the 'Dukes living prison.'

"In England when there is a release on bail the sureties are often said to be bound *corpus pro corpore.*" Vol. 2, p. 589.

The bail being thus bound for the production of his principal, he can excuse himself for a failure to do so only upon showing that his principal, if living, is in the custody of the State, and, therefore, beyond the control of the bail. If he permits his principal to escape beyond the jurisdiction of the court, he takes the responsibility; and being in law the custodian of the principal, the bail must produce him either for trial or for surrender, as provided by the statute.

In holding that the appellee was released by the insanity of his principal, we are of opinion the circuit court was in error.

Judgment reversed and cause remanded for further proceedings.