## Miller, et al. v. Commonwealth.

(Decided November 4, 1921.)

## Appeal from Monroe Circuit Court.

1. Bail—Discharge of Sureties.—As an ordinary rule, the custody of one charged with a public offense, and admitted to bail, is in the sureties upon his bond, and they can relieve themselves from liability, only, by surrendering him to the court, if in session, and if the court is not in session, to the jailer.

2. Bail—Discharge of Sureties.—An implied covenant, upon the part of the state, exists in every contract, by which one is discharged from custody upon a bail bond, that the state will not interfere with the friendly custody of the sureties, and will not prevent their delivering him to the jailer, or surrendering him to the court and be relieved from liability, and if the state through its constituted authority does something which will make their delivery of the principal to the jailer, useless, and create circumstances, under which he would be discharged from the custody of the jailer immediately, the sureties in the bond will be discharged.

BASIL RICHARDSON and G. M. MILLER for appellant.

CHAS. I. DAWSON, Attorney General, and W. P. HUGHES, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing.

At the August term, 1916, of the Monroe circuit court, an indictment was pending against one Frank Hagan and Linda Hagan, which accused them of the crime of murder. He was admitted to bail in the penal sum of $1,000.00, and thereupon executed a bond to the Commonwealth of Kentucky, conditioned that he would appear in that court on the 7th day of its August term, 1916, to answer the indictment, and would at all times render himself amenable to the orders and processes of the court in the prosecution of the charge, and if convicted of the crime would render himself in execution of the judgment, and if he failed to perform either of the conditions, that he and his sureties would pay to the Commonwealth of Kentucky the sum of $1,000.00. The appellants, J. T. Hagan, J. F. Miller and G. M. Miller, became sureties in the bond.

No order of the court, with reference to the action, appears until the August term, 1918, a period of two years, during which time it is presumed that the defend-

ant, Frank Hagan, was at liberty under this bond. At the August term, 1918, the following order was made, viz.:

"August term, 3rd day, 7th day of August, 1918. Commonwealth of Kentucky v. Linda Hagan, Frank Hagan. 4939—Murder."

"This day this prosecution was called for trial, and the defendants being in court in person, and by attorney, and the attorney for the Commonwealth announced that it was not ready for trial, and on his motion it is ordered that the defendants and witnesses herein be discharged without day, and they may go hence, until they are again summoned, and the clerk will not set this case for trial until thirty days' notice is given defendants before some regular term of court."

No further step seems to have been taken in the action until the August term, 1919, when without any notice having been given to the defendants, the following order was made, viz.:

"August term, 10th day, 15th day of August, 1919. Commonwealth of Kentucky v. Linda Hagan, Frank Hagan. 4939—Murder."

"On motion of attorney for Commonwealth, it is ordered that this prosecution be continued until the third day of the next December term of this court, and that subpoena be issued for such witnesses as the county or Commonwealth's attorney desires, returnable to said day; but subpoena will not issue until notice has been served on either the defendants or their attorneys thirty days or more before the day for trial."

Thereafter the county attorney caused a notice to be served, signed by himself, upon certain persons who are described in the notice as the attorneys of the defendant, Frank Hagan, warning them of the time the action had been set for trial. This notice was executed upon the persons designated as the attorneys, more than thirty days before the first day of the December term, 1919, the term at which the action was set for trial, but no notice to that effect was given to the defendant, Frank Hagan. He failed to appear at the December term, 1919, and forfeiture of the bond was ordered, and the sureties were summoned to show cause, at the April term, 1920, why a judgment should not be rendered against them upon the forfeiture.

The sureties responded that the order, which was made at the August term, 1918, of the court, had the effect to discontinue the prosecution, and to discharge the defendant from their friendly custody as sureties, and to permit him to go when and where he chose, and that he had departed from the state and was residing in Indiana, and they were thereby released from liability upon the covenants of the bond, and further that notice had never been given to their principal, of the fact of his presence having been required to answer the indictment, on account of his failure to do which, the forfeiture had been directed. The response was held insufficient, and judgment was rendered against the sureties for the amount of the penalty of the bond, and they have appealed.

Becoming bail for one indicted or held for a public offense, is a contract between the sureties in the bail bond and the state to the effect that the accused, the principal in the bond, will appear in court at the time and place designated to answer the charge, and there submit himself to trial, and will be amenable to the orders and processes of the court in the prosecution of the charge, and if convicted will render himself in execution of the judgment, and if he fails in the performance of either of these covenants, they will pay the penalty of the bond to the Commonwealth of Kentucky. Under the provisions of the Criminal Code, the sureties in the bond may relieve themselves of liability upon it at any time, by surrendering the principal to the court, if it is in session, or if the court is not in session, by procuring a copy of the bond and either delivering the principal to the custody of the jailer, or by authorizing a peace officer to perform the service for them. A principle which seems to be controlling in all cases of the execution of bail, is that the sureties have control and custody of the principal and are bound for his appearance to answer the charge, until they relieve themselves of the liability by surrendering him to the court, or to the jailer. Willis v. Commonwealth, 85 Ky. 68; Ramey v. Commonwealth, 83 Ky. 534; Miller v. Commonwealth, 1 Duv. 15; Commonwealth v. Coleman, 2 Met. 385; Gray v. Commonwealth, 100 Ky. 645; Commonwealth v. Overby, 80 Ky. 208; Yarbrough v. Commonwealth, 89 Ky. 151; Commonwealth v. Allen, 157 Ky. 6. In the contract between the sureties and the state, there is also an implied covenant on the part of the latter, that it will not interfere with the right of the sureties to re-

tain the principal in their custody, nor with their right to discharge themselves as bail for him, by taking him into actual custody and surrendering him to the court, or delivering him to the jailer, and will furthermore assist them in so doing, through its peace officers if their assistance is necessary, and they are called upon to render such assistance in the manner prescribed by law. Hence, the sureties are excused from fulfilling the requirements of the bond if they are prevented by the act of the law, or by the act of the obligee, the state, through its constituted authorities. Holland v. Bouldin, 4 T. B. M. 147; Gilman v. Jerkins, 11 N. H. 343; White v. Bland, 22 Wend. 612; Matoon v. Eder, 6 Cal. 57. Cases supporting this principle are the numerous ones, where a person upon bail to answer for a public offense is imprisoned in another place in the state, or where he has become insane and is confined by the law in an asylum for the insane.

The same principle would apply, where in the prosecution of an offense, or during the pendency of an indictment for an offense, the court, without the consent of the sureties in the bail bond of the accused, should make such an order or disposition of the accused that it would prevent their custody of him, or render futile an arrest and delivery of him to the jailer, or would impose upon them a greater liability than required by the terms of the bond. If the court makes such an order, with reference to the accused, that he would not be detained in custody, if delivered to the jailer, the sureties on his bond would be discharged because such delivery would be useless, and it would be manifestly unfair to sureties to require them to stand upon the bond, when they are deprived of their legal right to discharge themselves therefrom, by delivering him to the jailer, and if it became useless to do so, the law would not require a vain and useless thing. 6 C. J. 920. No case has arisen in this jurisdiction with the exact facts of this one, and it will be necessary to rely upon the above stated general principles, and certain cases somewhat similar, for its solution. When the order made by the court, at the August term, 1918, is examined, it appears that on motion of the Commonwealth's attorney, the defendant, who was present in court, was "discharged without day," the order reading "the defendants and witnesses herein be discharged without day, and they may go hence until they are again summoned, and the clerk will not set this case for trial until thirty days' notice is given defendants before some regular term

of court." This procedure is not authorized by any law, but is not forbidden by any law, when taken with the consent of the defendant, and without objection on his part. There exists, in the prosecution of persons for criminal and penal offenses, a custom which authorizes the "filing away of indictments with leave to reinstate" them, which may be done when the defendant is not before the court, or if before the court by his agreement and consent. Ashlock v. Commonwealth, 7 B. M. 44; Jones v. Commonwealth, 114 Ky. 599; Commonwealth v. Bottom, 105 Ky. 222; Hall v. Commonwealth, 17 K. L. R. 231. In Jones v. Commonwealth, *supra,* where the indictment was ordered to be "filed away, with leave to reinstate" it upon the docket, in the future, the defendant was before the court and under bail. This court held that the "filing away," over the objection of the defendant, was erroneous. It was said, however, "The filing away of an indictment, with leave to reinstate it did not operate as a dismissal thereof, but only as a discontinuance of the case for the time being." The following excerpt from Commonwealth v. Bottoms, *supra,* was quoted with approval: "The legal effect of such an order was simply a continuance indefinitely and an exoneration of any bail for appearance unless the contrary should appear in the order; and upon reasonable notice being given to the accused the case might stand for trial at any term of court." The indictment against Bottoms was filed away with leave to reinstate it by agreement between him and the Commonwealth's attorney, but the court said in discussing the effect of such an order, similarly made, in any case, would exonerate the bail for appearance. The question of the liability of bail for appearance was not at issue in this case, and hence, the language there used, with reference to it, is only persuasive. In Hall v. Commonwealth, 17 K. L. R. 231, the liability of the sureties in a recognizance for the amount of the bail required for the appearance of the defendant, was the question for decision, and the court said:

"If it be true, that the indictment in question was filed away as claimed by appellant, then there was no prosecution pending in law at the June term. Hence no order, forfeiting the bond, could be legally made, nor could any judgment be legally rendered upon said bond and such judgment would be clearly erroneous, if not absolutely void. If, however, the judgment is not void, the filing away of the indictment would have the effect

to release the sureties in the bail bond; and that fact if pleaded and proved by appellant, would have been a good defense.'' Hence, to file away an indictment with leave to reinstate it, does not have the effect to *nolle prosequi* the indictment nor to dismiss it, but the effect is to continue it indefinitely, and possibly for all time, and if the defendant is upon bail, the sureties are discharged from liability upon the bond, because the state has by its action in ''filing away'' the indictment, made it useless for the sureties to deliver the defendant to the jailer, as he would be entitled to immediate release from custody, because the state could not hold a citizen in prison upon a charge which it had filed away and refused to try him upon, or to give him an opportunity to be delivered according to law.

It is true, the order of August term, 1918, discharges the defendant, Frank Hagan, ''without day,'' and that ancient legal term, has according to Bouvier, a meaning as follows: ''This signifies that the cause or thing to which it relates is indefinitely adjourned, when a case is adjourned 'without day' it is not again to be inquired into. When the legislature adjourns 'without day' it is not to meet again.'' The other parts of the order, however, show that it was not intended to have that meaning, as it provided that the clerk should again set the indictment for trial, when thirty days' notice should have been given to the defendants, but who was to give that notice, or whose duty it was to give it does not appear from the order. Hence the order did not amount to the dismissal of the indictment, nor to a *nolle prosequi,* but it had the effect to remove the case from the docket, and to indefinitely continue the prosecution, and possibly, it would never be reinstated, by again being set upon the docket for trial, nor could it be known that notice of a purpose to try the case would ever be given to the defendants. The order did not direct the indictment to be filed away with leave to reinstate it in words, but it was similar in effect to such an order, and must be held to have carried with it the same consequences. The indictment was never to be reinstated upon the docket for trial until after thirty days' notice to the defendant, nor did the defendant have to appear in court to answer to it until he had received such notice, and whether or not such notice would ever be given was problematical. The indictment, in the meantime, remained in the same place, and in the same condition, as if it had been filed away. The consent

of the sureties was not obtained for this proceeding, and it was had without their knowledge, so far as the record indicates and they could not have contemplated when executing the bond, that any such turn would ever take place in the prosecution, or that they would be required to assume the additional liability of seeing that their principal appeared to answer the indictment at the pleasure of the prosecution, and not at the times provided by law. It would have been useless for them to have arrested the principal and delivered him to the jailer, and thus automatically discharge themselves from liability on the bond in the ordinary way, because the state having in effect filed the indictment away with leave to reinstate it, and declined to try the defendant until at an indefinite time, or probably never, it surely could not have held the defendant in jail until such time as the state should determine to proceed against the defendant, after having his agreement which prevented him from at any time demanding a trial, until thirty days' notice should have been given him, of the purpose of the state to bring him to trial.

The order made at the August term, 1919, was made in the absence of the defendant, and at a time when, in accordance with the order of the August term, 1918, he was not required to be present, or to take cognizance of the proceedings, and hence, must be assumed to have been without his knowledge. The terms under which he consented to an indefinite continuance of the indictment, and the discharge of all his witnesses, as well as those for the Commonwealth, were, that if the indictment should be reinstated by being set upon the docket for trial, again, that he would be given thirty days' notice of the time when he would be expected to appear and answer it. A notice to his attorneys would not be binding upon him, without he had consented thereto, and the order fails to show any consent or knowledge upon his part. The order to which he consented, at the August term, 1918, required the serving of the notice upon him. The notice provided for by section 631, Civil Code, is a notice such as the Civil Code provides for in the conduct of an action, and not such a notice as the order at the August term, 1918, provides shall be given to the defendant. No such notice as is there provided for is provided for by the Code in any such proceeding. Hence, the principal in the bond had no notice of the setting of the indictment for trial as provided for by the order of the August term, 1918, and he was not required to appear or defend the indictment

until such notice was given and served upon him, as provided in that order.

The judgment is, therefore, reversed and the cause remanded for proceedings not inconsistent with this opinion.