COMMONWEALTH vs. THE STUYVESANT INSURANCE COMPANY.

Worcester.    October 7, 1974. — January 10, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & KAPLAN, JJ.

*Bail,* Custody of principal, Forfeiture, Discharge of surety.   *Words,* "Bail," "Recognizance."

Discussion of the contractual obligations between a bail bondsman and the Commonwealth. [614-617]

Where a principal was rearrested after failing to appear for trial, and the lower court removed the defaults against the principal and the surety, thus restoring the bail obligation of principal and surety, and ordered the principal held without bail pending the appearance of an agent for the surety, thus breaching the Commonwealth's contract, the surety was no longer obligated for subsequent defaults by the principal. [617-620]

A judge who wishes, after the default of a principal, to release that principal in the custody of a surety can (1) remove the default and free the principal immediately or (2) remand the principal to custody, pending the surety agent's arrival, without removing the default. [621]

SEVEN ACTIONS OF CONTRACT. Writs in the Superior Court dated August 14, 1970.

The actions were heard by *Meagher,* J.

*Jeffrey M. Smith* for the defendant.

*Gerald J. Power,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J.   These are seven actions brought by the Commonwealth against the defendant surety on defaulted

bail bonds. At trial without a jury in the Superior Court, the judge found for the plaintiff in the full face amount of the bonds, $7,000. The case is before us on the defendant's consolidated bill of exceptions which challenges the judge's failure to grant the defendant's motion for exoneration and discharge and the judge's denial of five of the defendant's requests for rulings of law.[1] In essence, the defendant (surety) claims that the evidence warranted rulings that the bonds were void at the time the default was entered and that the surety had surrendered its principal in exoneration and discharge of its obligations before default. We hold that the bonds were void and sustain the exceptions.

The following facts appear from the statement of agreed facts included in the bill of exceptions. William Hoar, Jr.

---

[1] The requested rulings denied by the judge were:

"1. There is no sufficient evidence to warrant a finding for the plaintiff.

"2. If the court should find that defendant executed a bail bond as surety for the principal named therein, providing that the obligation thereunder was that if the principal would personally appear before this court 'and then and there answer to said complaint or indictment, appeal and abide the order and sentence of the court thereon, and also in like manner personally appear at any subsequent sitting of said court to which the proceedings . . . may be continued, if not previously surrendered or discharged . . . until the final decree, sentence or order of said court thereon, and abide such final sentence, order or decree of said court thereon, and not depart without leave,' the obligation thereunder would be void; and that the defendant surrendered the principal, who was then and there present, into court before any default, but the court refused to acknowledge the surrender, then this court must rule that defendant's obligation thereunder became void.

"3. If the court should find that defendant executed a bail bond as surety for the principal named therein, providing that the obligation thereunder was that if the principal would personally appear before this court 'and then and there answer to said complaint or indictment, appeal and abide the order and sentence of the court thereon, and also in like manner personally appear at any subsequent sitting of said court to which the proceedings . . . may be continued, if not previously surrendered or discharged . . . until the final decree, sentence or order of said court thereon, and abide such final sentence, order or decree of said court thereon, and not depart without leave,' the obligation thereunder would be void; and that defendant offered to surrender the principal, who was then and there present, into court before any default, but the court refused to acknowledge the surrender, then this court must rule that defendant's obligation thereunder became void.

"4. If the court should find that prior to March 2, 1970, the principal was defaulted, that on said date he was arrested, brought before the court and held without bail, that on March 4, 1970, the principal was brought before the court, and over the objection of defendant who wanted to surrender the principal, the default was removed and the principal released on the same bail bond, this court must rule that the defendant was discharged and must find for defendant. . . .

"6. If this court should find that defendant's obligation under the aforesaid bail bond became void, the court must find for the defendant."

(the principal) was named in seven separate District Court complaints. He gave bail to appear and answer each of the complaints or subsequent indictments returned against him. The surety, acting through its attorney-in-fact, executed surety bonds on the principal's behalf for all seven complaints. After the principal had been bound over to the Superior Court, the grand jury returned seven indictments against him. He appeared for arraignment in the Superior Court and pleaded not guilty. When the case was called for trial on January 14, 1970, however, the principal failed to appear. Both he and the surety were defaulted and a capias was issued for the principal's arrest.

The police apprehended the principal and arrested him on the capias. On March 2, 1970, the principal was taken before a judge of the Superior Court. The judge removed the default against the principal and the surety and ordered the principal held without bail pending the appearance of an agent for the surety. On March 4, 1970, the surety's agent appeared with the principal and informed the judge that he was surrendering the principal. The principal, the agent said, was not a good risk and had not paid the company for its services. The judge refused to "acknowledge the surrender." Over the agent's protest, he released the principal on the same bail. The principal was called for trial on March 20, 1970, and, once again, failed to appear. A default was entered against the principal and the surety and a capias issued. The police have been unable to locate the principal.

At trial on the defaulted bail bonds, after presentation of the evidence but before final argument, the surety filed a motion for exoneration and discharge because of the surrender of the principal, and, at the same time, submitted six requests for rulings of law. The trial judge denied the motion and the surety excepted. Stating that the evidence supported a ruling for the plaintiff and that the bonds were not void, the trial judge granted only one of the requested rulings.[2] Again, the surety claimed exceptions. After the

---

[2] He ruled that "[a]n agent of the defendant has the authority to surrender the principal."

judge ordered the entry of judgment for the plaintiff, the surety filed this bill of exceptions.

The bill of exceptions presents two interlocking questions of law for our determination: (1) Were the bail bonds, which were defaulted because of the principal's second nonappearance, void before this failure to appear caused entry of the second default? (2) Did the surety's surrender of the principal or its offer of surrender discharge and exonerate the surety from its obligation on the bonds before the principal's second nonappearance?[3] Because of the view we take of the case, we do not reach the issue of surrender.

A court admits a defendant to bail in order to assure the defendant's appearances in court. Simultaneously, the court permits the defendant to enjoy freedom from confinement while he awaits disposition of his case. *United States* v. *Kirkman,* 426 F. 2d 747, 752 (4th Cir. 1970). *United States* v. *Lee,* 170 Fed. 613, 614 (S. D. Ohio, 1909). *People* v. *Pugh,* 9 Cal. App. 3d 241, 250 (1970).

In assuming the position of bail, the surety enters into a contract with the Commonwealth by which the surety guarantees that the principal will appear and answer. *United States* v. *Davis,* 202 F. 2d 621, 625 (7th Cir. 1953). *Miller* v. *Commonwealth,* 192 Ky. 709, 711 (1921). *State* v. *Liakas,* 165 Neb. 503, 507 (1957). See *Reese* v. *United States,* 9 Wall. 13, 20-21 (1869). See also G. L. c. 276, § 65. If the surety fails to produce its principal at the appointed time, a default will be entered against the principal and surety and the principal's obligation and that of his surety will be forfeited. G. L. c. 276, § 71.[4] After the default has

---

[3] This issue rests at the heart of the proceedings below. The trial judge, in rejecting the surety's attempt to surrender the principal, stated that he wished to construct a test case which would reach this court and would clarify the power of a Superior Court judge to accept or deny a surrender under the statute. See G. L. c. 276, §§ 68, 69. He made this explicit in the hearing on March 4: "If you ever want to, I am trying to get some gentlemen in your position to take this up to the Supreme Court. So if you want to contest it, I would be more than happy to have it contested."

[4] The contracts on the bail bond form a triangular pattern. In addition to the undertaking between surety and State, obligations run between the principal and the State and between the surety and the principal. Thus, the principal is liable to

been entered, the Commonwealth must initiate proceedings to obtain a judgment on the forfeiture of the bonds. G. L. c. 12, § 28. See G. L. c. 276, §§ 71, 74, 75, 76. Default does not necessarily compel the surety or the principal to pay the Commonwealth the full face amount of the bonds, however. A judge may remove the default for "good cause" (G. L. c. 276, § 36), "remit the whole or any part of the penalty" (G. L. c. 276, § 69), or render judgment for part of the face amount of the bonds (G. L. c. 276, § 74).

When the Commonwealth releases the principal from confinement, it commits him to the exclusive custody of the surety, his bail. *Commonwealth* v. *Brickett,* 8 Pick. 138, 139 (1829). *Reese* v. *United States,* 9 Wall. 13, 21 (1869). *Taylor* v. *Taintor,* 16 Wall. 366, 371 (1872). *Continental Cas. Co.* v. *United States,* 314 U. S. 527, 531 (1942). *People* v. *McReynolds,* 102 Cal. 308, 311 (1894). *Talbot* v. *New Amsterdam Cas. Co.* 237 N. Y. 245, 248 (1923). See *Way* v. *Wright,* 5 Met. 380, 383 (1843). The surety does not exercise this custody as the Commonwealth would. The principal is not shackled, confined, or impeded in his daily movements. Indeed, the surety cannot arrogate to itself these coercive aspects of the Commonwealth's power. See *Commonwealth* v. *Johnson,* 3 Cush. 454, 459-460 (1849); *Reese* v. *United States,* 9 Wall. 13, 21 (1869). The notion of custody implies only that the surety legally obtains sufficient control over the principal to assure his appearances, to prevent disappearances, and to surrender the principal in discharge of the surety's obligation to the Commonwealth. See *Reese, supra; Miller* v. *Commonwealth,* 192 Ky. 709, 711-712 (1921). This limited custody is the basis of the surety's responsibilities. Under the terms of the suretyship agreement, the surety has custody, and must produce the principal for trial. At the same time, custody

the State for his nonappearance. Similarly, the surety may incur liability to the principal if it breaches its contract with him without adequate reason by prematurely surrendering him to the authorities. Compare *Karakey* v. *Mollohan,* 15 S. W. 2d 692 (Tex. Civ. App. 1929), with *Tyler* v. *Capitol Indem. Ins. Co.* 206 Md. 129 (1954). This issue of the potential liability of the surety to its principal for premature surrender was raised at oral argument but was not briefed by the parties.

enables the surety to fulfill its undertaking with the Commonwealth. The grant of custody is a grant of power to perform the conditions of the bail bond. Stated in formal contract terms, the surety's exclusive custody is the consideration supplied by the Commonwealth for the surety's guaranty that the principal will appear and answer.[5] *People* v. *McReynolds,* 102 Cal. 308, 311 (1894). *Bean* v. *County of Los Angeles,* 252 Cal. App. 2d 754, 758 (1967). There is an implied term in the contract that the Commonwealth will not interfere with the surety's custody of the principal. *Miller* v. *Commonwealth,* 192 Ky. 709, 711-712 (1921). *State* v. *Liakas,* 165 Neb. 503, 507-508 (1957).

Thus, when the Commonwealth interferes with the surety's custody, it breaches its contract with the surety. This breach discharges the surety from its obligations on the bond. *Miller* v. *Commonwealth, supra,* at 712. *Nichols* v. *United States,* 22 F. 2d 8, 9 (1st Cir. 1927). See *Beavers* v. *Haubert,* 198 U. S. 77, 85 (1905); *Miller* v. *State,* 158 Ala. 73, 75 (1909). Consistent with this principle, the Commonwealth's actions which render impossible the production of the principal will discharge the surety from its responsibilities and potential liability. G. L. c. 276, § 70. *Way* v. *Wright,* 5 Met. 380, 383 (1843). *Taylor* v. *Taintor,* 16 Wall. 366, 369-371 (1872). *United States* v. *Egan,* 394 F. 2d 262, 265 (2d Cir. 1968), cert. den. sub nom. *Stuyvesant Ins. Co.* v. *United States,* 393 U. S. 838 (1968). *State* v. *Liakas,* 165 Neb. 503, 508 (1957). See *Turner* v. *Bartlett,* 109 Mass. 503, 505 (1872). If the Commonwealth contributes to the nonappearance of the principal and consequent default of principal and surety, it violates its undertaking and will excuse the surety from liability for the default. See *United States* v. *Vendetti,* 33 F. Supp. 34 (D. Mass. 1940); *People* v. *Meyers,* 215 Cal. 115 (1932).

---

[5] Nothing said here should be interpreted to mean that the Commonwealth, on granting custody to the surety, loses its inherent *authority* to recover physical custody of the principal if such action becomes necessary. See *Commonwealth* v. *Teevens,* 143 Mass. 210, 214-215 (1887). But, as is explained more fully elsewhere in this opinion, rearrest by the Commonwealth on the same charge would release the surety from its obligations. See text at pp. 617-620. *infra.*

The most obvious type of interference with the surety's custody occurs when the Commonwealth arrests the principal on the charge for which he was bailed.[6] The Commonwealth then specifically replaces the surety as the principal's custodian. It resumes responsibility for his location (see Restatement: Security, § 206, comment b [1941]) and bears the risks of escape and nonappearance. The principal loses his freedom of movement and must endure closer confinement. Rearrest on the same charge clearly breaches the Commonwealth's contract on the bond as to custody and liberty. In these circumstances, the surety is discharged and the bail bond is considered void. *People* v. *McReynolds,* 102 Cal. 308 (1894). *People* v. *Maldonado,* 49 Misc. 2d (N. Y.) 641 (1966), affd. 31 App. Div. 2d (N. Y.) 717 (1968). Restatement: Security, § 206 (2) (1941). See *National Surety Co.* v. *United States,* 29 F. 2d 92, 97 (9th Cir. 1928); *Miller* v. *State,* 158 Ala. 73 (1909). Cf. *State* v. *Gonzalez,* 69 N. J. Super. 283, 288-289 (1961).

In the instant case, the January 14 default established the liability of the surety to pay the face amount of the bonds to the Commonwealth. See *Commonwealth* v. *Johnson,* 3 Cush. 454, 459 (1849); *Commonwealth* v. *Dowdican's Bail,* 115 Mass. 133, 137 (1874). After the arrest of the principal, the default was removed, pursuant to G. L. c. 276, § 36,[7] by the judge. The removal abolished the surety's liability for that particular default and reinstated

---

[6] The Commonwealth does not, by granting bail, relinquish its right to arrest the principal for other offenses. It may hold him in custody until he is bailed on the new charges. However, if the new custody interferes with production of the principal for hearings on the old charges, the liability of the surety may be discharged or suspended. See, generally, annotation, 4 A. L. R. 2d 440 (1949). Cf. *Way* v. *Wright,* 5 Met. 380, 385 (1843).

[7] General Laws c. 276, § 36, refers in terms to a default on a "recognizance." However, we believe, and the parties agree, that the section governs both recognizances and bail bonds. Though the words "recognizance" and "bail" have different meanings and may, in appropriate circumstances, denote different arrays of rights and obligations, "when used in statutes [they] are often construed as interchangeable. . . . [S]peaking generally, like rules of law are applicable to both these kinds of obligation." *National Surety Co.* v. *Nazzaro,* 233 Mass. 74, 76 (1919). To emphasize the distinction between bail and recognizance here would be to deny judges authority to remove defaults on bail bonds (there is no other provision) while permitting them to remove defaults on recognizances. This cannot have been the legislative intent. Moreover, in other sections of G. L.

the original bail bonds.[8] *People* v. *Pugh,* 9 Cal. App. 3d 241, 246 (1970). *Bruntlett* v. *Carroll County,* 193 Iowa 875, 879 (1922). *People* v. *Thomas,* 75 Misc. 2d (N. Y.) 490 (1973). See *People* v. *Maldonado,* 49 Misc. 2d (N. Y.) 641 (1966), affd. 31 App. Div. 2d (N. Y.) 717 (1968). Contra Rule 46 (f) of the Federal Rules of Criminal Procedure, 18 U. S. C. Appendix (Supp. II, 1972).[9]

---

c. 276, the Legislature freely utilizes the words "bail" and "recognizance" as though they were synonymous. See G. L. c. 276, §§ 30, 68, 69. Cf. G. L. c. 276, § 65. Without any indication in the statutory language that the Legislature sought to distinguish "bail" from "recognizance" in this section, we hold that the section applies to both "bail" and "recognizance."

[8] The statute is silent as to the effect of the removal of a default on the underlying bail bond contracts. General Laws c. 276, § 67, supplies no information. The provision refers to release on "further" bail after default and has no bearing on release on the original bail after default has been removed by the court.

There are no dispositive decisions in this jurisdiction. However, other jurisdictions with roughly analogous bail systems regard removal ("setting aside" in California, Iowa and New York cases) of the default as reviving the original bail obligation. Cases are cited in the body of the opinion. We subscribe to this view.

The statutory language and history provide some support for our conclusions. The language of the predecessors to G. L. c. 276, § 36, spoke of recording the default and, for good cause, having the default "taken off." Gen. Sts. c. 170, § 18 (1860). Pub. Sts. c. 212, § 27 (1882). Rev. Sts. c. 217, § 35 (1902). Plainly, in the procedure envisioned by the draftsmen, the judge, if he found good cause, would order the figurative "erasure" ("taking off") of the default entry from the records. After erasure, no default would remain. Yet, the original bail bond entries in the court records and the bail bonds themselves would not have been affected and, it would seem, they remain in effect — really revived by the elimination of the default notation.

The statutory language which speaks of a default being "removed" was substituted in the 1921 revision of the Revised Laws. G. L. c. 276, § 36. It appears to be only a refinement in the statutory language. "Removed" and "taken off" carry the same meaning in this context.

[9] Rule 46 (f) provides in part that "[w]hen the condition of the bond has been satisfied *or the forfeiture thereof has been set aside* or remitted, the court shall exonerate the obligors and release any bail" (emphasis supplied). It would seem from the mandatory quality of the word "shall," in the rule that, once a forfeiture has been set aside, the Federal court *must* free the surety from its obligations on the bail bond. The bail bond would then be voided automatically.

We decline to follow this Federal rule. Removal of a forfeiture under the Massachusetts statute (see fn. 8, *supra*) has a more limited effect. Removal merely terminates the surety's immediate liability to the Commonwealth; it does not terminate the obligations on the bond. Mandatory discharge of the surety would deprive the court of discretion to tailor the terms of removal to the requirements of the situation. The judge would have a choice between terminating the surety's liability or permitting the Commonwealth to collect the penal sum. In either case the principal would necessarily return to confinement, unless

As a necessary corollary to the reinstatement of the original bail bonds, the principal was entitled to his freedom on the surety's custody. After the judge had removed the default, he remanded the principal to jail to await the arrival of the surety's agent and thus breached the Commonwealth's contract on the bonds. Though, perhaps, the temporary loss of custody caused no apparent injury to the surety's interest, that fact is not relevant. The surety had a right to rely on its original contract with the Commonwealth. *Reese* v. *United States,* 9 Wall. 13, 21 (1869). The return of the principal to the Commonwealth's custody, whether for "ten minutes or ten months" (*People* v. *McReynolds,* 102 Cal. 308, 312 [1894]), breached that contract. The surety, in accordance with our previous analysis, could then treat its obligation as void and could not incur liability for a subsequent default. *People* v. *Maldonado,* 49 Misc. 2d (N. Y.) 641 (1966), affd. 31 App. Div. 2d (N. Y.) 717 (1968). Restatement: Security, § 206 (2) (1941).[10]

---

the court could arrange a bargain with the surety by which a new bail bond obligation would be entered into.

We believe the better principle to be that the bail bond obligation continues after removal of the forfeiture. The surety, though it has, presumably, excused its forfeiture to the judge's satisfaction, has not fulfilled its obligation under the bond. It had been liable for the full face amount of the bond. It loses nothing when, after removal of forfeiture, it resumes its obligation and remains in jeopardy for the penal sum. Automatic continuance of the bond obligation permits conditional re-release of the principal on such terms as the court may deem just.

Indeed, the Federal courts appear to recognize the necessity for such discretion. Rule 46 (e) (2) of the Federal Rules of Criminal Procedure, 18 U. S. C. Appendix (Supp. II, 1972), grants authority for the exercise of such discretion: "The court may direct that a forfeiture be set aside, *upon such conditions as the court may impose*" (emphasis supplied). To the extent that Rule 46 (e) (2) provides for conditional setting aside of forfeiture, it appears to conflict with Rule 46 (f) and to support our resolution of the issue.

[10] Restatement: Security, provides at § 206 (2): "(2) Where a defendant before the time for his appearance is taken into custody by the officers of the law in the cause for which he has been bailed, the surety on his bail bond is discharged." Because of the view we take of this case, we believe that the Restatement's language is directly in point. Though the remand of the defendant to custody occurred after he had defaulted and, thus, after "the time for his appearance," the removal of the default expunged the default from the record. After removal of the default, the events which engendered the default no longer are a factor in the analysis of rights and obligations on the reinstated bonds. See fns. 8 and 9, *supra.* Accordingly, in determining the effect of the remand to custody, the prior default

The judge could not create a new obligation by attempting to "continue the bail" and "refusing to acknowledge the surrender." He could not unilaterally create the surety's contractual liability. *Miller* v. *State,* 158 Ala. 73, 77-78 (1909). *People* v. *Henry,* 33 App. Div. 2d (N. Y.) 1031 (1970). See *Reese* v. *United States,* 9 Wall. 13, 21 (1869). The judge's statement was, in reality, an offer to the surety to resume its suretyship by entering into a new obligation. Had the surety's agent acquiesced or given some signification of acceptance, a new bail contract, admittedly evidenced by the old bonds, would have arisen. See *Carolina Cas. Co.* v. *United States,* 229 F. 2d 933 (7th Cir. 1956); *United States* v. *Coats,* 458 F. 2d 192 (10th Cir. 1972). However, the surety's agent did not acquiesce. He protested and attempted to "surrender" the principal. As we have seen, on March 4 there was no surrender to be made. The agent's actions constitute a rejection of the judge's offer. No new contract was entered into. Accordingly, the Commonwealth could secure no judgment for a default of a new bond; it never existed.[11]

In *People* v. *Maldonado,* 49 Misc. 2d (N. Y.) 641 (1966), affd. 31 App. Div. 2d (N. Y.) 717 (1968), a New York court reached a result identical to ours in a case which was virtually on all fours with the instant case. In that case, the principal was indicted and released on bail. When called, he failed to appear. The court issued a bench warrant and declared the bail forfeited. Execution on the forfeiture was

---

and surrounding events are irrelevant. The time for the principal's required appearance lay sometime subsequent to the remand to custody — either March 4 or March 20. In this technical sense, the principal was restored to the custody of the Commonwealth "before the time for his appearance." Under the Restatement rule, the surety was discharged.

[11] There is no merit to the Commonwealth's contention that failure to save an exception constituted acquiescence in the formation of a new bail obligation. Though we have some question that an exception was available to the surety when the principal was readmitted to bail (see *Wright* v. *Burbee,* 112 Vt. 197 [1941]), we do not express an opinion on this point. Protest by the potential surety and refusal to contract should shield a surety from further bail obligations. It seems elementary that the Commonwealth cannot unilaterally impose obligations of contract on the surety. Similarly, it seems elementary that the Commonwealth cannot recover on an unformed contract. The surety need not save an exception at the time of admission to bail to challenge later a claim of this nature.

stayed. The principal appeared the following day, the forfeiture was vacated, and he was remanded to the custody of the corrections authorities. Approximately thirty minutes later, the court "reconsidered" its action and, on the motion of the principal's attorney, "restored" bail. The principal, after release, failed to appear once again and bail was forfeited. However, the judge granted a motion to vacate the forfeiture. He wrote: "[T]his court finds that when the principal was remanded it amounted to a revocation of the bail bond, and the attempted reinstatement, without the consent of the surety, was an act without authority in law." *Id.* at 643.

For the future, we note that if a judge, after default of a principal, is considering the release of the principal in the custody of the surety, two valid procedures are open to him: He can (1) remove the default and free the principal immediately or (2) remand the principal to custody, pending the agent's arrival, *without removing the default.* The latter course would seem preferable. A default should not automatically be dissolved on arrest of the principal. Default on bail bonds or recognizances is a weighty matter which may be excused only for "good cause." G. L. c. 276, § 36. See *People* v. *Fiannaca,* 306 N. Y. 513, 516-517 (1954); *People* v. *Peerless Ins. Co.* 21 App. Div. 2d (N. Y.) 609, 621 (1964). Before permitting the surety and principal to escape the financial consequences of the default and to benefit from renewal of the Commonwealth's bail contract, the judge should inquire fully into the circumstances surrounding the earlier failure to appear. If he deems it necessary, the judge should condition removal of the default and readmission to bail on acceptance of reasonable restrictions on the principal's movements and on limitations of the surety's absolute right to surrender the bail without cause. Such conditional default removals, deriving appropriate substance from the discretionary orders of the trial judge, are common in the statutory schemes and case law of other jurisdictions. See Deering's Cal. Code Anno., Penal, § 1305; *People* v. *Pugh,* 9 Cal. App. 3d 241, 252 (1970); *United States* v. *Davis,* 202 F. 2d 621, 624-625

(7th Cir. 1953), cert. den. sub nom. *Ferguson* v. *United States,* 345 U. S. 998 (1953). Compare Rule 46 (e) (2) of the Federal Rules of Criminal Procedure with Rule 46 (f) of the Federal Rules of Criminal Procedure. Good justification for surrender of the principal by the bail, after a conditional default removal, would arise only if the surety had reasonable grounds to believe that the principal intended to repeat his failure to comply with the terms of the bond.

In the instant case, because the judge below remanded the principal to jail after removing the default and thus restoring the bail obligation of principal and surety, we must sustain the defendant's exceptions. The original bail bonds were void on March 4. No new obligation arose. There could be no liability to the Commonwealth predicated on the nonappearance of the principal on March 20.

*Exceptions sustained.*
*Judgment for the defendant.*