## COMMONWEALTH *vs.* YOHAN GOMEZ.

No. 09-P-1938.

Suffolk. September 17, 2010. - January 11, 2011.

Present: McHugh, Katzmann, & Vuono, JJ.

*Bail. Practice, Criminal,* Default. *Words,* "Bail."

Forfeiture of bail was not appropriate where a criminal defendant was unable to appear in court, as required by the terms of his bail, due to his being held in the Commonwealth's custody for a different offense. [571-577]

INDICTMENTS found and returned in the Superior Court Department on December 13, 2007.

A bail forfeiture hearing was had before *Elizabeth M. Fahey,* J.

*J. Thomas Kerner* (*Veronica J. White* with him) for the defendant.

*Joseph M. Ditkoff,* Assistant District Attorney, for the Commonwealth.

KATZMANN, J. While released on bail and during a jury trial, the defendant Yohan Gomez was arrested for an unrelated offense and detained in Commonwealth custody. He was unable to appear in the trial court as scheduled on the second day of trial because he was in police custody for the new offense and, thus, was defaulted at trial. The defendant appeals from a ruling by the trial judge forfeiting his bail for failure to appear. We conclude that the judge improperly ordered the forfeiture of bail under these circumstances and reverse.

1. *Background.* The defendant was indicted in December, 2007, in Superior Court on multiple charges, including assault with intent to murder while armed with a firearm. Bail was initially set at $150,000 cash. In February, 2009, bail was reduced to $25,000 cash. The defendant paid his own bail, and as such, no surety was involved.

On July 21, 2009, a jury was impaneled but not sworn for the defendant's assault trial. The defendant was still out on bail so he was free to leave at the end of the court session. He was instructed to return to court the next morning in order to begin the trial. That evening the defendant was arrested by Boston police and charged with a drug-related crime unrelated to his ongoing assault trial. He was held by the police overnight in connection with the alleged drug crime.

On the morning of July 22, 2009, the defendant was transported to the District Court to be arraigned for the drug charges, arriving shortly before 10:00 A.M. Because the defendant was first in Boston police custody and later awaiting arraignment in District Court, he was not able to report to the Superior Court in a timely fashion.

Upon learning that her client had been arrested, the defendant's attorney immediately began making efforts to secure the defendant's prompt transfer to Superior Court and notified the judge of the problem. The judge suggested defaulting the defendant so that a warrant would be issued, allowing the defendant to be released to the warrant and transported to Superior Court. The defendant's attorney objected to defaulting the defendant and reminded the judge that the defendant was not intentionally defaulting but, rather, had been arrested. Over defense counsel's objections, the judge ruled that the defendant had defaulted and issued a warrant.

In addition to issuing a warrant, the judge also worked to secure the defendant's expeditious transfer to Superior Court by asking the assistant district attorney at Superior Court to notify the assistant district attorney in District Court; asking the most senior police officer present in Superior Court to contact the Boston police department to arrange for the defendant's speedy transfer; and contacting the District Court to try to expedite the defendant's arraignment. Court personnel from the Superior Court were also in communication with the District Court.

When the defendant had not been transported to the Superior Court by 10:15 A.M. and it was not clear when he might arrive, the judge released the jurors for the day. The jurors were instructed to return the next day, July 23, 2009. The defendant was ultimately transported to Superior Court later in the day on

July 22, 2009. The trial began on July 23, 2009, with the defendant in attendance.

On July 27, 2009, after the jury had begun deliberating, the judge raised the issue of forfeiture of bail and heard arguments from both the defendant and the Commonwealth. Both parties indicated that they thought forfeiture was inappropriate. On July 28, 2009, the judge heard additional arguments before ordering the bail forfeited. The judge found that the defendant "willfully set in motion the events that resulted in his arrest. . . . [I]f you intentionally set in motion certain action[s] that result in your arrest, your bail is liable to be forfeited." After the defendant's motion to reconsider was denied, he filed a notice of appeal.

2. *Discussion.* Under the Massachusetts statutory scheme,

> "A person held in custody or committed upon a criminal charge, if entitled to be released on bail, or a person held in custody or committed as a witness to a crime, may, instead of giving surety or sureties, at any time give his personal recognizance to appear before the court and deposit the amount of the bail which he is ordered to furnish, or bonds or a properly assigned bank book, of the kind and in the amount and under the conditions set forth in section fifty-seven for making deposit of like nature, with the court, clerk of the court or magistrate authorized to take such recognizance, who shall give him a certificate thereof, and upon delivering said certificate to the officer in whose custody he is, shall be released. The court or magistrate shall forthwith, upon receipt of such amount, deposit it with the clerk of the court."

G. L. c. 276, § 79, as amended by St. 1959, c. 313, § 26. The question before this court is whether, in the absence of a surety, a judge can order the forfeiture of bail when the principal defaults from his court appearance because he is being held in Commonwealth custody on a separate charge. This is a matter of first impression in Massachusetts.

The defendant argues that under G. L. c. 276, § 70, he should not be held liable for the default. That statute provides:

> "If, by the act of God, of the government of the United States, of any state or by sentence of law, bail are unable

without their fault to surrender their principal, they shall, upon motion before final judgment on scire facias, be exonerated and discharged by the court, with or without costs as the court deems equitable."

G. L. c. 276, § 70. In order to determine whether § 70 applies to the defendant, it is necessary to understand the meaning of the word "bail" in the statute. In interpreting § 70,

> "we look first to the language of the statute. Statutory language is the principal source of the insight into legislative purpose. When the words of a statute are clear, they are to be given their ordinary and natural meanings. If the meanings are unclear, the statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated. In addition, a statute should be read as a whole to produce an internal consistency."

*Adoption of Marlene*, 443 Mass. 494, 497-498 (2005) (citations omitted).

"Bail" as used in § 70 has been interpreted to apply to sureties. *Commonwealth* v. *Stuyvesant Ins. Co.*, 366 Mass. 611, 616 (1975) (*Stuyvesant*). Cf. *Taylor* v. *Taintor*, 83 U.S. (16 Wall.) 366, 369 (1873) (applying similar common-law rule to sureties). Observing that "[t]he most obvious type of interference with the surety's custody occurs when the Commonwealth arrests the principal of the charge for which he was bailed," *Stuyvesant*, 366 Mass. at 617, the court held that where "the Commonwealth contributes to the nonappearance of the principal and consequent default of principal and surety, it violates its undertaking and will excuse the surety from liability for the default." *Id.* at 616. Informed by *Stuyvesant*, we conclude that the term "bail" in § 70 should also be read to govern defaults on recognizance.

In *Stuyvesant*, the Supreme Judicial Court construed the reach of G. L. c. 276, § 36,[1] a statute that provides for default if the

---

[1] General Laws c. 276, § 36, provides: "If the recognizor does not appear

recognizor fails to appear in accordance with the terms of his recognizance. The court was thus concerned with the obverse of the case before us in that it was construing a statute that referred to recognizance, but not to bail. Determining that in the absence of any indication in the statutory language to the contrary, the statute applies to both "bail" and to "recognizance," the court noted that "[t]hough the words 'recognizance' and 'bail' have different meanings . . . , 'when used in statutes [they] are often construed as interchangeable . . . . [S]peaking generally, like rules of law are applicable to both these kinds of obligation.' " *Id.* at 617 n.7, quoting from *National Surety Co.* v. *Nazzaro,* 233 Mass. 74, 76 (1919). The court found that this was the situation in G. L. c. 276, § 36, and that "the Legislature freely utilizes the words 'bail' and 'recognizance' as though they were synonymous" in other sections of G. L. c. 276, specifically citing G. L. c. 276, §§ 30, 68, and 69. *Ibid.* Furthermore, "[w]ithout any indication in the statutory language that the Legislature sought to distinguish 'bail' from 'recognizance' in this section, we hold that the section applies to both 'bail' and 'recognizance.' " *Ibid.*

There is no indication in G. L. c. 276, § 70, that the Legislature intended to distinguish "bail" from "recognizance." Furthermore, we do not understand *Stuyvesant* as purporting to present an exclusive list of all the sections of G. L. c. 276 where "bail" and "recognizance" are interchangeable. Interpreting "bail" in the same manner throughout G. L. c. 276 is consistent with the general proposition that statutes should be construed as a whole. *Telesetsky* v. *Wight,* 395 Mass. 868, 873 (1985). In sum, the term "bail" in § 70 should also be read to govern defaults on recognizance. Cf. *Stuyvesant,* 366 Mass. at 617 n.7.

Applying G. L. c. 276, § 70, to principals as well as sureties is consistent with G. L. c. 276, § 82A, as amended by St. 1994,

according to his recognizance, the court or justice may issue process to bring him into court for trial. After his failure so to appear, the court or justice may at any time order his default recorded; but it may be removed for good cause at any time to which the case may be continued. If such default is not removed, the recognizance shall be certified with a record of such default to the superior court, and like proceedings shall be had thereon as upon a breach of the condition of a recognizance for appearance before said superior court, except in cases where bank books, bonds or money have been deposited at the time of the recognizance."

c. 68, § 7, the bail jumping statute, which provides for penalties when defendants released on "bail or recognizance" fail to appear "without sufficient excuse." Indeed, G. L. c. 276, § 82A, is referenced in G. L. c. 276, § 58, as amended by St. 1971, c. 473, § 1: "A person, before being released on personal recognizance without surety, shall be informed by the person authorized to admit such person to bail of the penalties provided by section eighty-two A if he fails without sufficient excuse to appear at the specified time and place in accordance with the terms of his recognizance." The phrase "without sufficient excuse" in G. L. c. 276, § 82A, means "deliberate conduct contrary to that which was required — this in distinction from conduct which the actor did not will, or was unable to control." *Commonwealth* v. *Love*, 26 Mass. App. Ct. 541, 545 (1988). Interpreting G. L. c. 276, § 70, in a manner consistent with G. L. c. 276, § 82A, dictates that a similar analysis of the reasons for default should be conducted both when considering forfeiture and when considering other penalties. See *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975) ("where two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose").

Although most case law on exoneration is focused on sureties, at least one other jurisdiction has held that a rule against the forfeiture of bail where the principal was prevented from fulfilling the obligations of his bail due to incarceration applies to principals as well as sureties. *Sanders* v. *State*, 166 Tex. Crim. 255, 256 (1958) ("The rule seems to be well settled, both in this and other jurisdictions, that, where the principal is confined in jail or the penitentiary by virtue of commitment from the same court or another court in the state at the time his bond is forfeited, such confinement exonerates both the principal and his sureties").

There appears to be no legitimate reason to distinguish between sureties and principals posting their own bail. A surety could be a friend or family member, but it could also be a company hired by the defendant. As such, interpreting G. L. c. 276, § 70, to apply only to sureties would have the bizarre result of providing relief from forfeiture in some cases where the defendant hires a surety but denying the same relief to a defendant who posts his own bail in cash.

Reading G. L. c. 276, § 70, to mean that "bail" should also relate to "recognizance" is not precluded by G. L. c. 276, § 71.[2] Section 71 outlines what happens when a person under recognizance[3] fails to appear as required: "his default shall be recorded, his obligation and that of his sureties forfeited, and process issued against them." As noted above, the sections of G. L. c. 276 "should be read as a whole to produce an internal consistency." *Telesetsky* v. *Wight,* 395 Mass. at 873. Accordingly, reading G. L. c. 276, § 71, in the context of other relevant sections of G. L. c. 276 informs and buttresses the conclusion that judicial discretion is involved in determining whether to issue a default or forfeit bail. G. L. c. 276, § 36 ("After [the recognizor's] failure so to appear, the court or justice *may* at any time order his default recorded") (emphasis added). G. L. c. 276, § 80 ("At any time after default of the defendant, the court *may* order forfeited the money, bonds or bank books deposited at the time of the recognizance") (emphasis added). See *Stuyvesant,* 366 Mass. at 614-615 ("After the default has been entered, the Commonwealth must initiate proceedings to obtain a judgment on the forfeiture of the bonds. G. L. c. 12, § 28. See G. L. c. 276, §§ 71, 74, 75, 76. Default does not necessarily compel the surety or the principal to pay the Commonwealth the full face amount of the bonds, however. A judge may remove the default for 'good cause' [G. L. c. 276, § 36], 'remit the whole or any part of the penalty' [G. L. c. 276, § 69], or render judgment for part of the face amount of the bonds [G. L. c. 276, § 74]"). Moreover, G. L. c. 276, § 70, provides that even if bail forfeiture proceedings have been initiated as outlined by

[2]General Laws c. 276, § 71, provides: "If a person under recognizance to appear and answer or to prosecute an appeal in a criminal case fails to appear according to his recognizance, and if a person under recognizance to testify in a criminal prosecution fails to perform the condition of his recognizance, his default shall be recorded, his obligation and that of his sureties forfeited, and process issued against them or such of them as the prosecuting officer directs; but in such suit no costs shall be taxed for travel. No such process shall issue in cases where bank books, bonds or money have been deposited at the time of such recognizance."

[3]Since § 71 addresses the forfeiture of obligations of both sureties and principals, this is another instance where recognizance and bail were used interchangeably. The statute applies to both defendants who were released on recognizance and those who used sureties. See discussion, *supra.*

G. L. c. 276, § 71, exoneration must be granted in the limited circumstance provided for under § 70.

For all the above reasons, G. L. c. 276, § 70, applies equally to both sureties and principals who post their own bail. Regardless of who posts bail, forfeiture is not appropriate when defendants are unable to appear in court, as required by the terms of their bail, due to the fact that they are being held in government custody. Our holding does not preclude revocation of bail, which may be appropriate in some cases. See G. L. c. 276, § 58 (when a person is originally admitted to bail, he must be advised that, as an explicit condition of release, "should said person be charged with a crime during the period of his release, his bail *may be* revoked in accordance with the third paragraph of this section")[4] (emphasis added). See generally *Paquette* v. *Commonwealth*, 440 Mass. 121, 126 (2003).

In any event, forfeiture of bail would not be appropriate on the facts of this case.[5] The defendant was unable to appear in Superior Court the morning of July 22, 2009, because he was in Commonwealth's custody. His attorney informed the trial judge promptly of the nature of the problem and took appropriate steps to have the defendant transported to Superior Court as quickly as possible. The judge appears to have defaulted the defendant primarily as a strategy to obtain the expeditious transfer of the defendant, and the fact that the defendant was defaulted does not mean bail had to be forfeited.[6] Indeed, both the Commonwealth and defense counsel agreed at trial that bail forfeiture was inappropriate in this case. There is no evidence that the defendant was attempting to secure some sort of advantage by being arrested on the eve of his trial. Moreover, the judge did not inquire into the facts or circumstances with regard to the new drug charges,[7] raising the specter of due process violations by

---

[4]See note 7, *infra*.

[5]Since the forfeiture ruling did not rely on any findings of fact, credibility determinations, or discretionary decisions uniquely within the purview of the judge involved, review is de novo. See *Delaney* v. *Commonwealth*, 415 Mass. 490, 495 (1993) (applying de novo review to modifications, revisions, or revocations of bail under the sixth paragraph of G. L. c. 276, § 58).

[6]See discussion, *supra*.

[7]Compare G. L. c. 276, § 58 (probable cause determination required before revocation of bail): "If a person is on release pending the adjudication of a

penalizing the defendant through forfeiture of bail for a crime without a sufficient showing of his connection to the alleged offense. Thus, the facts in this case make forfeiture of bail inappropriate.[8]

*Order of bail forfeiture reversed.*

---

prior charge, and the court before which the person is charged with committing a subsequent offense after a hearing at which the person shall have the right to be represented by counsel, finds *probable cause* to believe that the person has committed a crime during said period of release, the court shall then determine, in the exercise of its discretion, whether the release of said person will seriously endanger any person or the community. In making said determination, the court shall consider the gravity, nature and circumstances of the offenses charged, the person's record of convictions, if any, and whether said charges or convictions are for offenses involving the use or threat of physical force or violence against any person, whether the person is on probation, parole or other release pending completion of sentence for any conviction, whether he is on release pending sentence or appeal for any conviction, the person's mental condition, and any illegal drug distribution or present drug dependency. If the court determines that the release of said person will seriously endanger any person or the community and that the detention of the person is necessary to reasonably assure the safety of any person or the community, the court may revoke bail on the prior charge and may order said person held without bail pending the adjudication of said prior charge, for a period not to exceed sixty days." (Emphasis added).

[8]In light of our disposition, we do not reach the defendant's argument that the "rule of leniency" applies.